LEHIGH VALLEY RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5767, 9938, 12320, 12586.   Promulgated June 9, 1949.

*Cedric A. Major, Esq.*, and *Vernon C. Ryder, Esq.*, for the petitioner.
*Walt Mandry, Esq.*, for the respondent.

978

984

OPINION.

HARRON, *Judge*: The first question presented stems from the respondent's disallowance of certain deductions from income of taxes imposed by the State of New Jersey, claimed by petitioner in the taxable years, and concerns the years in which such taxes, and the interest on the unpaid portion thereof, may be properly accrued.

There is no question here as to the total amount of the state taxes assessed, the amounts paid before the due date, the amount of the unpaid portion, the dates and amounts of subsequent payments, or the amounts currently deducted by petitioner in its income tax returns; nor is there any question as to the total amount of interest paid thereon, the main controversy being when the taxes and the interest on the unpaid portion thereof are accruable and deductible by petitioner in its income tax returns.

It is the position of the respondent that the liability of the petitioner

to pay the tax assessed by the State of New Jersey was incurred in the year for which the tax was imposed, and that the interest on the delinquent taxes accrued ratably over the years from the time the taxes were due.

It is the petitioner's contention that the litigation between it and the State of New Jersey was instituted to determine not only the amount of the tax, but its liability to pay the contested balance. It argues that the unpaid balance of the tax imposed in each taxable year was accruable only as and when paid, or upon the termination of the litigation between it and the state, either by a final decision of the courts or by the discontinuance of the appeals. It further argues that interest on the unpaid balance of the tax imposed became accruable when the liability for the unpaid taxes was determined.

If it is determined that petitioner is not entitled to a deduction in 1939 of the amount claimed for interest in respect to contested amounts for 1932, 1933, and 1936 taxes, then petitioner contends, in the alternative, that it is entitled to interest deductions in 1939, 1940, and 1941 of $666,738.62, $553,579.62, and $129,531.55, respectively, which, although in accordance with the respondent's contentions, have been allowed only to the extent of $10,561.47 for 1940 and $19,125.13 for 1941.

The respective contentions of the parties as to the correct years for the accrual of the New Jersey tax and interest items and the amounts thereof are set forth in the margin.[1]

| (1) Calendar year | Tax liability | | Interest liability | |
|---|---|---|---|---|
| | Petitioner's contention | Respondent's contention | Petitioner's contention | Respondent's contention |
| 1932 | $975,536.52 | $1,864,787.47 | | $8,892.51 |
| 1933 | 671,973.88 | 1,714,301.72 | | 106,710.11 |
| 1934 | 574,091.83 | 1,769,929.79 | | 239,040.55 |
| 1935 | 591,635.69 | 1,820,417.52 | | 387,577.83 |
| 1936 | 1,000,000.00 | 1,868,101.48 | | 531,424.84 |
| 1937 | 2,273,657.84 | 1,837,946.92 | $265,484.47 | 506,126.97 |
| 1938 | 1,100,000.00 | 1,975,721.09 | | 583,387.90 |
| 1939 | 2,967,109.96 | 1,770,520.71 | 1,393,842.70 | 666,738.62 |
| 1940 | 1,730,864.66 | 1,813,037.71 | 301,201.64 | 553,579.62 |
| 1941 | 4,549,894.03 | | 129,531.55 | 129,531.55 |
| 1942 | | | 99,530.82 | 99,530.82 |
| 1943 | | | 79,253.31 | 79,253.31 |
| 1944 | | | 1,856,212.19 | 233,262.15 |
| 1945 | | | 2,072,115.63 | 2,072,115.63 |
| Total | 16,434,764.41 | 16,434,764.41 | 6,197,172.41 | 6,197,172.41 |

NOTE: The amount of $2,967,109.96 which petitioner contends was deductible in the year 1939 is computed as follows: $1,746,401.81 (balance of 1932 and 1933 taxes which became fixed in 1939), plus the sum of $120,708.15 (amount paid in 1939 on account of 1936 tax), plus the sum of $1,100,000 (amount of 1939 tax admitted and paid in that year).

The amount of $1,730,864.66 which petitioner contends was deductible in the year 1940 is computed as follows: $461,229.83 (paid in 1940 on account of 1934-36 taxes), plus $1,269,634.83 (the portion of the taxes levied for 1940 admitted and paid by Lehigh in that year).

The amount of $4,549,894.03 which petitioner contends was deductible in 1941 is computed as follows: $1,726,103.91 (balance of 1934-36 taxes which became fixed and certain in 1941), plus $2,823,790.12 (balance of 1937-40 taxes which became fixed and certain in 1941 when Lehigh discontinued its appeals for those years).

Section 23 (c) of the Internal Revenue Code permits the deduction from gross income of taxes "paid or accrued within the taxable year." Sections 41, 42, and 43 of the code make provisions for tax accounting on the accrual basis, where the taxpayer keeps his books on that basis, provided his method clearly reflects his income in any taxable year.

It is well settled that in order to reflect income in any taxable year a taxpayer may deduct from gross income a liability which in fact accrues in that year. *United States* v. *Anderson*, 269 U. S. 422; *American National Co.* v. *United States*, 274 U. S. 99; *Aluminum Castings Co.* v. *Routzahn*, 282 U. S. 92; *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290.

It has long been held that, where a taxpayer keeps its accounts on the accrual basis, a liability for taxes accrues for income tax purposes and is deductible from gross income, as any other expense, when all the events have occurred which fix the amount of the tax and determine the taxpayer's liability to pay it. *United States* v. *Anderson, supra.* An accrual may be proper, if there is legal liability, even though the amount is not definitely fixed, if all the events have occurred by which the amount may be determined with reasonable exactitude. *Continental Tie & Lumber Co.* v. *United States, supra*; but where the amount of the tax, if there is legal liability, is contested by the taxpayer and depends in a substantial measure on the occurrence of future events, an accrual is improper. *Lucas* v. *American Code Co.*, 280 U. S. 445; *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281. A liability does not accrue so long as it remains contingent. *Brown* v. *Helvering*, 291 U. S. 193; *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516.

During the years 1932–1940, the State of New Jersey assessed in each year taxes on the petitioner's property located in that state. The petitioner paid in each of the years, before the due date, a portion of the taxes assessed for which it admitted liability, and contested in the courts the amount unpaid on the ground that the asserted levies were illegal because discriminatory and based on value arrived at by methods which did not reflect the true value of the property taxed within the intendment of the taxing statute.

During the progress of the litigation, the petitioner paid additional amounts to the State of New Jersey in conformity with restraining orders of the United States District Court, requiring it to bring its payments on account of taxes up to a prescribed percentum of the tax originally imposed for the respective years. (At first the requirement was 50 per cent, this was later increased to 60 per cent, and finally to 70 per cent, of the tax originally assessed.) Thereafter the amounts which were unpaid remained in controversy.

It is the petitioner's theory that liability for the amounts of the taxes which it paid during litigation accrued as a matter of law in the years when paid, and that liability for the amounts remaining unpaid and contested in the courts accrued in the years when the litigation was terminated, either by final action of the United States Supreme Court or by discontinuance of the appeals.

The respondent argues that all of the events upon which the tax was predicated had occurred in the year the tax was imposed by state law, and the amount of the tax liability was then fixed and ascertainable as to the end of the taxable period. He urges that the litigation instituted by the petitioner did not serve to postpone the accrual of the unpaid taxes, because it related only to the amount of the tax and did not question the validity of the taxing act or deny liability for taxes on its New Jersey property. Under his theory, in order to properly reflect income of the taxpayer, the taxes must be charged against the income earned during each taxable period as properly attributable to the process of earning income during such period, although the amount thereof was in dispute and contingent upon the outcome of the contest.

Respondent cites, in support of his position, *United States* v. *Anderson, supra; American National Co.* v. *United States, supra; Continental Tie & Lumber Co.* v. *United States, supra*, and related cases. The facts of the case before us are materially different from the cited cases, and this case does not fall within the principle governing those decisions. In the *Anderson* case, all the events had occurred in 1916 which fixed the liability for the munitions tax at a fixed rate on the business done in that year. There was no contest as to the amount of the tax or the taxpayer's liability to pay it. The only question was when it was deductible from gross income. The tax was due and payable in 1917, and the taxpayer was contending that under the statute "only taxes actually paid during the year were deductible in determining net income for the year," and that "a tax does not accrue until it is due and payable." In *American National Co., supra*, the taxpayer kept its books on an accrual basis. The bonus contracts provided definitely for the payment of a fixed amount. The Supreme Court held that under the doctrine of the *Anderson* case the amount of the bonus contracts was deductible as an expense incurred within the year, "although it did not accrue in that year in the sense of becoming then due and payable." *Continental Tie & Lumber Co., supra*, involved the question of whether an award to a railroad for an operating deficit during the period of Federal control was taxable as income in 1920,

when the Transportation Act authorizing the payment was passed, or in 1923, when the amount was determined and paid. The act prescribed the method of calculating the amount from data which was in existence prior to its passage. The Court held that the right to the award was fixed by the passage of the Transportation Act and "what remained was mere administrative procedure to ascertain the amount to be paid." There was no contest as to either the amount of the award or the liability of the United States to pay it.

The cases relied on by the respondent recognized the rule that, where there is legal liability to pay a tax, all the events must have occurred to fix the amount of the tax or determine it with reasonable exactitude before the tax may be accrued. Income tax laws do not profess to embody perfect economic theory. They deal in actual things, not merely things contemplated as more or less sure to occur in the future. An expense may be accrued upon all the facts and circumstances upon which payment will eventuate. But if a material fact in the expenditure is uncertain or contingent upon some event which will take place in the future, then the accrual of the expense is not proper until the happening of the future event, because the material fact can not be definitely determined until that time. The cases agree that, if the liability of a taxpayer to make the expenditure has been fixed and is not contested, the amount of the expenditure may be accrued. But if the liability to make the expenditure is contested, and the result of the contest has not been determined, then an accrual of the expenditure is not proper until such determination. Cf. *Lucas* v. *American Code Co., supra; Dixie Pine Products Co.* v. *Commissioner, supra; Security Flour Mills Co.* v. *Commissioner, supra; Koppers Coal Co.,* 6 T. C. 1209; *Brighton Mills, Inc.,* 7 T. C. 819; *William Justin Petit,* 8 T. C. 228; *Baltimore & Ohio Railroad Co.* v. *Magruder* (U. S. Dist. Ct., Dist. Md., Apr. 1, 1948).

The respondent argues that there is a difference between contesting the amount of an expenditure and the liability to make it. He says that, in the case of a tax, all the facts upon which the tax is based are known when the tax is imposed and that, if a taxpayer contests the amount of the tax imposed, such a contest does not go to his liability to pay the tax (imposed), and, therefore, the tax imposed may be accrued, regardless of the contest.

We think this rule which the respondent seeks to lay down is too narrow and not within the rationale of the cases on which he relies, nor is it in conformity with the most recent administrative rulings

of the Treasury Department.[2]  When a taxpayer disputes the amount of the tax imposed, he very definitely disputes his liability to pay such amount.  As a practical matter, it is, therefore, impossible to differentiate between a denial of liability to pay the tax and a denial of liability to pay the amount assessed, although liability for some amount may be admitted and may not be contested.  The rule in the *Anderson* case requires that in order to accrue an item all the events which fix the amount of the tax, *and* the liability to pay it, must have happened.  The form of the rule, as more recently stated in *Dixie Pine Products Co., supra,* is as follows:

It has long been held that in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer.

Clearly, the rule requires that, in advance of accrual, all the events shall occur which fix *both* the amount of the tax and the liability of the taxpayer to pay it.

In the present case the petitioner, after paying over to the state the portion of the tax imposed for which it admitted liability, strenuously contested its liability for the unpaid amount on the ground that it was illegally imposed through the device of overvaluation of its property by the state's taxing authorities.  It should, however, be borne in mind that the data on the books of the petitioner in the year the tax was imposed extended only to the property concerned, and that the method used by the state in arriving at the value of that property was actually the thing contested by petitioner in the courts.

---

[2] The former administrative ruling of the Treasury Department as set out in I. T. 3491, C. B. 1941-2-177, was revoked by I. T. 3863, I. R. B. Aug. 11, 1947, p. 11, pursuant to G. C. M. 25298, I. R. B. 1947, p. 2.   With respect to the former ruling, G. C. M. 25298 says :

"The rule which has been followed by the Bureau for a number of years is that, regardless of the nature of the reasons underlying the delay in its determination, a deficiency in tax is deductible for Federal income tax purposes, by a taxpayer who keeps accounts and files Federal income tax returns on the accrual basis, for the taxable period with respect to which the tax is imposed (p. 3)."

The G. C. M., after a review of the *Dixie Pine* and *Security Mills* cases, then holds :

"By the statement that 'a taxpayer may not accrue an expense the amount of which is unsettled,' the Court would appear to have arrived at the position that accruability of an unpaid liability item must await the occurrence of all the events necessary to settle the amount and to establish the *fact of the taxpayer's liability*, including the resolution of a bona fide contest of the fact of liability.   (Cf. *Burton-Sutton Oil Co.* v. *Commissioner*, issue 3, 3 T. C. 1187, 1196, acquiescence, C. B. 1944, 4 ; *Atlantic Coast Line Railroad Co.* v. *Commissioner*, 4 T. C. 140, acquiescence, C. B. 1944, 2 ; and I. T. 3746, C. B. 1945, 141.)

"It is the opinion of this office that, under a proper interpretation of the Supreme Court decisions discussed herein, unpaid amounts asserted against a taxpayer as additional tax liabilities, which are the subject or a bona fide contest, are not accruable items for Federal income tax purposes while *unsettled* as to amount and prior to the establishment of the *fact* of liability.   The term 'contest' includes not only a contest in court (I. T. 3746, supra), but a contest lodged with the tax authorities as well.   (See *The Great Island Holding Corporation, et al.* v. *Commissioner*, 5 T. C. 150, acquiescence, C. B. 1945, 3.) Accordingly, it is recommended that I. T. 3491 (C. B. 1941-2, 177), which is contrary to this view, be revoked."   [P. 6.]   [Emphasis supplied by G. C. M.]

It is true that the method of valuation used by the state tax commissioner had been used by the state for many years prior to the imposition of the tax for any of the years here in question, but it is nevertheless true that what the state threw into the crucible to spell valuation determined the reaction ultimately identified as the amount of the tax, and while a contest as to the ingredients eventually becomes a contest as to the amount, we can not ignore the formula by saying that only the result was in litigation. It was undoubtedly true that the petitioner was contesting the authority of the commissioner of taxes to arbitrarily determine values for tax purposes without taking into consideration economic elements entering into the value of railroad property. That there was considerable ground for petitioner's contention is evidenced by the decision of the United States District Court, *Central Railroad Co. of New Jersey* v. *Martin*, 30 Fed. Supp. 41 (Nov. 1, 1939),[3] in the 1934–1936 cases, which set aside the contested tax levies as based on assessments which were "arbitrary, capricious, basically unsound, and so grossly excessive as to amount to constructive fraud." It is further evidenced by the fact that the controversy was the subject of four special messages from the Governor of New Jersey to the Legislature and occasioned a revision of the New Jersey system of taxation.

The record shows that the litigation as to the amounts of the taxes imposed for 1932–1933 which were unpaid and in controversy was terminated on April 17, 1939, when the United States Supreme Court denied Lehigh's petition for rehearing in those cases. The litigation as to the amounts of the 1934–1936 taxes, unpaid and in controversy, was terminated April 28, 1941, when the United States Supreme Court denied certiorari in those cases. Thereafter, on August 4, 1941, the petitioner discontinued its appeals in the 1937–1940 cases.

In our judgment, the unpaid amount of the taxes imposed in each of the years 1932–1940, which was contested in the courts, was so contingent and uncertain as to make accrual improper until the termination or discontinuance of the litigation. We hold, therefore, that the amounts of 1932–1933 taxes which were unpaid and in litigation on January 1, 1939, accrued in 1939; that the amounts of the 1934–1936, and the 1937–1940 taxes which were unpaid and in litigation on January 1, 1941, accrued in 1941. *Lucas* v. *American Code Co.*, *supra*; *Dixie Pine Products Co.* v. *Commissioner*, *supra*; *Security Flour Mills Co.* v. *Commissioner*, *supra*.

We hold, further, that amounts of the unpaid and contested taxes which were paid from time to time during the progress of the litiga-

---

[3] This case was reversed by the Circuit Court of Appeals partly on procedural grounds and partly on the case of *Nashville, Chattanooga & St. Louis Railway* v. *Browning*, 310 U. S. 362, decided May 20, 1940, after the judgments here appealed from were entered.

tion accrued and were deductible from gross income in the respective years when paid.

The record shows that during each of the years 1932 to 1938 the petitioner deducted from gross income amounts of taxes levied for that year which were unpaid and the liability for which it was contesting in the courts (such deductions, however, did not result in a tax benefit to the petitioner in any of the years). A similar situation was presented in *Dixie Pine Products Co.* v. *Commissioner, supra.* The Court there said:

> Here the taxpayer was strenuously contesting liability in the courts and at the same time deducting the amount of the tax on the theory that the state's exaction constituted a fixed and certain liability. This it could not do. It must, in the circumstances, await the event of a state court litigation and might claim a deduction only for the taxable year in which the liability for the tax was finally adjudicated.

See also *Security Flour Mills Co.* v. *Commissioner, supra.* Cf. *Bank of Newberry*, 1 T. C. 374; *Stanard-Tilton Milling Co.*, 3 T. C. 1026; *Greene Motors Co.*, 5 T. C. 314. On the authority of these cases, we hold that petitioner was not entitled to deduct in any year amounts of taxes levied for that year which were unpaid where it was contesting its liability for them. Such amounts could be accrued and deducted only in the years the liability was determined.

The parties agree that the interest on the delinquent taxes should be accrued in the year when the liability for such taxes became fixed and the amount thereof was determined. We have held that the liability for the delinquent taxes accrued in the respective years when paid or when the litigation was terminated. The same rule applies to the interest in question. *Burton-Sutton Oil Co.*, 3 T. C. 1187; *Great Island Holding Corporation*, 5 T. C. 150; *Koppers Coal Co., supra.*

A subsidiary issue includes petitioner's class 2 property in Jersey City. It was largely waterfront property outside the main stem of the railroad, which was taxed locally. The state tax commissioner had originally valued the property, on January 1, 1939, at the sum of $14,149.513. This valuation was contested by petitioner. The state tax commissioner reduced the valuation by the sum of $1,177,533. Petitioner appealed to the state board and Jersey City filed a cross-appeal, with the result that the state board restored the original valuation. On September 22, 1942, the Supreme Court of New Jersey granted to petitioner a writ of certiorari to review the action of the state board. On November 13, 1944, after briefs had been filed, and while the action was pending, petitioner consented to dismiss the writ. On November 29, 1944, petitioner paid $72,407.64 representing $56,969.03 for tax and $15,438.61 for interest thereon. Of these amounts, respondent has allowed only $6,266.59, which sum he allowed in 1944 as interest allocable to that year on a prorated basis.

While the facts on this issue are meager, we think the contest of the imposed valuation by petitioner was bona fide, and, on the basis of the rule laid down above, the entire payment of $72,407.64 accrued in 1944, when petitioner consented to the dismissal of the writ of certiorari, and is deductible for that year. *Dixie Pine Products Co. v. Commissioner, supra.*

### Issue III—Accrual of Income From Mixed Claims Commission Awards.

#### FINDINGS OF FACT.

The mixed Claims Commission, United States and Germany, was established at some time after August 10, 1922, pursuant to the claims agreement with Germany, which was signed on August 10, 1922, by the United States and Germany.[4] The agreement of August 10, 1922, with the Government of Germany was made for the purpose of establishing a mixed commission to determine the amount to be paid by Germany in satisfaction of Germany's financial obligations under the Treaty of Berlin, which was signed by Germany and the United States on August 25, 1921. The Treaty of Berlin secured to the United States and its nationals rights specified in a resolution of the Congress of the United States of July 2, 1921, including rights under the Treaty of Versailles.

Under the agreement of August 10, 1922, with Germany, the Mixed Claims Commission was to consist of two commissioners, one appointed by the United States, and the other appointed by Germany; and the two governments could, by agreement, select an umpire to decide upon any cases concerning which the commissioners might disagree, or upon any points of difference that might arise in the course of their proceedings; and the decisions of the Commission and those of the umpire (in case there should be any), were to be accepted as final and binding upon the two governments. Also, the agreement provided that the Commission was to pass upon, *inter alia*, claims of American citizens arising since July 31, 1914, in respect of damage to their property. Under the agreement arguments were to be presented to the Commission by agents and counsel designated by the two governments.

On March 10, 1928, the Congress of the United States enacted an act which made provision for the payment of awards of the Mixed Claims Commission, United States and Germany, by creating in the Treasury a German special deposit account into which funds could be deposited and from which funds could be disbursed in payment of awards, among other things. This act is the Settlement of War Claims Act of 1928. The act prescribed the procedure to be followed in the

---

[4] 42 Stat. L. 2200, Claims Agreement with Germany.

payment of awards to nationals of the United States whose claims had been presented to the Mixed Claims Commission as claims of the United States, made by the United States in behalf of its nationals. Under this statute three steps were a prerequisite to the disbursement of funds by the Secretary of the Treasury from the German special deposit account in payments of awards, as follows: (1) The Secretary of State had to certify to the Secretary of the Treasury an award of the Mixed Claims Commission; (2) the Secretary of the Treasury was authorized and directed to make payments of the principal amount of each award so certified, plus interest, pursuant to a prescribed method; and (3) the claimant was required to make application for payment within two years after the date his award was certified by the Secretary of State to the Secretary of the Treasury.

Under the Settlement of War Claims Act of 1928, the decisions of the Secretary of the Treasury regarding payments from the German special deposit account were to be final and conclusive, and not subject to review by any other officer of the United States; and the Secretary of the Treasury, in his annual report to the Congress, was to include a detailed statement of all expenditures made in carrying out the provisions of the act. The act provided, further, that there should be deducted from the amount of each payment an amount equal to one-half of 1 per cent thereof as reimbursement to the United States for its expenses in presenting and obtaining an award.

The Settlement of War Claims Act of 1928, in creating the German special deposit account, provided that the Secretary of the Treasury should deposit in this special account all sums invested or transferred by the Alien Property Custodian and all money received by the United States in connection with claims of the United States against Germany on account of the awards of the Mixed Claims Commission.[5]

On July 29 and 30, 1916, explosions and fires occurred at petitioner's Jersey City terminal, the Black Tom Terminal. Millions of dollars worth of property, owned by others, was destroyed at the terminal, and hundreds of suits were filed and claims were made against petitioner for damages. As a result of the explosion and fires, and the lawsuits and claims, petitioner sustained losses in very large amounts. Petitioner believed that the explosions and fires were caused by sabotage on the part of the agents of the German Government, which was then at war. Claims of petitioner were filed by the United States Government, through its agent, with the Mixed Claims Commission, United States and Germany, for compensation for the losses sustained by petitioner as a result of the explosions and fires at the Black Tom Terminal. The claim of petitioner was before the Mixed Claims Commission for at least nine years. The presentation of the claims to

---

[5] See 45 Stat. L. 254; ch. 167, Settlement of War Claims Act of 1928.

the Commission and its consideration thereof had a complicated history. First, there was trial before the Commission at The Hague in 1930, and upon this trial a unanimous decision was rendered by the Commission on October 16, 1930, in favor of Germany. Thereafter, the United States filed petitions for rehearings, which were denied. Then evidence was discovered upon the basis of which the United States contended that the Commission had been misled by fraud and collusion at the trial in The Hague, and the United States petitioned the Commission to reopen the hearings on the claims. At this point, the commissioners representing the two governments disagreed. The umpire of the Commission was The Honorable Owen J. Roberts. He ruled that the Commission could reopen the hearings to consider further evidence to be offered by the American agent and evidence which might be offered in reply on behalf of Germany, and further evidence was introduced, and the American and German commissioners reviewed the additional evidence. However, on March 1, 1939, the German commissioner withdrew from the Commission. At that time the Commission had taken the claims under advisement, and was engaged in the task of deciding the issues presented, and there was pending before the Commission a motion of the American agent to set aside the decision which the Commission had made in favor of Germany on October 16, 1930, and to grant a rehearing on the entire record.

The umpire of the Commission found that there was disagreement between the American and German commissioners, which made it his duty to act in the decision of the claims. He concluded that the Commission had been seriously misled to the conclusion which it had reached in 1930 because material fraud in the proofs presented by Germany had existed. These conclusions of the umpire were set forth in a decision rendered by him on June 15, 1939. Pursuant to his decision, the umpire executed an order on June 15, 1939, which provided, *inter alia*, as follows:

1. The decision of October 16, 1930, reached at Hamburg be, and the same is hereby, set aside, revoked and annulled.

2. The Commission finds, on the record as it now stands, that the liability of Germany in both the Black Tom and Kingsland cases has been established.

3. It appearing from the communications, each dated June 10, 1939, one from the German Agent to the Commission, and the other from the German Embassy to the Secretary of State, that Germany does not intend to exercise her right to take further part in the proceedings of the Commission, and that on the findings made and opinions handed down this day by the Commission, and from what appears in the record, awards should now be rendered to the United States on behalf of claimants; the American Agent is directed to prepare and submit to the Commission for its approval awards in each of the pending sabotage claims. These awards will be considered at a further meeting of the Commission to be called on notice, and appropriate action thereon will then be taken.

The American agent thereafter prepared and submitted to the Commission for its approval awards in the pending sabotage claims, which were given consideration. On October 30, 1939, the Mixed Claims Commission entered its award, under which it was adjudged and decreed as follows:

ADJUDGED AND DECREED that under the Treaty of Berlin of August 25, 1921, and in accordance with its terms, the Government of Germany is obligated to pay to the Government of the United States on behalf of Lehigh Valley Railroad Company the sum of Nine Million Nine Hundred Thousand three hundred twenty-two and 77/100 ($9,900,322.77) Dollars with interest at the rate of Five per cent (5%) per annum from January 5, 1920, to date of payment.

The award and decree of the Commission was signed by the umpire, The Honorable Owen J. Roberts, and Christopher B. Garnett, American commissioners, in the city of Washington, D. C.

On October 31, 1939, pursuant to the provisions of the Settlement of War Claims Act of 1928, the Secretary of State, The Honorable Cordell Hull, certified the award in favor of the United States on behalf of the Lehigh Valley Railroad Co. to the Secretary of the Treasury.

On November 8, 1939, pursuant to the provisions of the Settlement of War Claims Act, petitioner filed application for payment of the Mixed Claims award with the Secretary of the Treasury.

The parties to this proceeding have stipulated as follows:

165. When the award was made to Lehigh on October 30, 1939 and certified by the Secretary of State to the Secretary of the Treasury on October 31, 1939, there were funds in the German Special Deposit Account equal to the amount of the first two of the three distributions above. The funds out of which the third distribution was made were not deposited in the German Special Deposit Account until 1941.

On and after November 8, 1939, petitioner was entitled to payments by the Secretary of the Treasury under the Settlement of War Claims Act of 1928 out of the German special deposit fund in the Treasury under the certification made by the Secretary of State on October 31, 1939, of the award made by the Mixed Claims Commission on October 30, 1939. At no time, on or after November 8, 1939, was any injunction or restraining order issued against the Secretary of the Treasury to enjoin or restrain him from making payment under the certification of the Secretary of State of the award, and at no time did the Secretary of the Treasury decide, pursuant to his authority under the Settlement of War Claims Act, section 8 (a), that all or a part of the principal amount of the award on behalf of Lehigh Valley Railroad Co. should not be paid.

On January 10, 1941, the Secretary of the Treasury paid petitioner, under the Mixed Claims Commission judgment of October 30, 1939, the gross amount of $9,818,595.75, which was $34,387.32 less than

$9,900,322.77, the principal amount of the award. On April 5, 1941, an additional gross amount was paid, $199,354.58. Deductions of one-half of 1 per cent were made by the Treasury from each payment for expenses of the United States. The gross and the net amount of these two payments were as follows:

| Date of payment | Gross amount | One-half of 1% | Net amount |
|---|---|---|---|
| Jan. 10, 1941 | $9,865,935.45 | $49,339.66 | $9,818,595.79 |
| Apr. 5, 1941 | 199,354.58 | 996.77 | 198,357.89 |
| Total | 10,065,290.03 | 50,336.43 | 10,016,953.68 |

The two payments of January 10 and April 5, 1941, covered the principal amount of the award of the Mixed Claims Commission to the United States on behalf of petitioner, plus payments on account of accrued interest on the award.

During the period October 31, 1939, until January 6, 1941, a proceeding was pending in the United States Federal courts which was instituted by the Z. & F. Assets Realization Corporation. This corporation was not in any way connected with the Lehigh Valley Railroad Co., and it was not a corporation which had made any claims against the Lehigh Valley Railroad Co., for any losses resulting from the disaster at the Black Tom Terminal. However, it had sustained some losses of its own during the period of the First World War for which it had claims against Germany which were presented by the United States, on its behalf, to the Mixed Claims Commission, United States and Germany. The Mixed Claims Commission had made a decision in favor of the United States in the claims of the Z. & F. Assets Realization Corporation, and this award had been certified by the Secretary of State to the Secretary of the Treasury for payment by the Secretary of the Treasury out of the German special deposit fund, all of which was before the Commission made an award on the claims of the Lehigh Valley Railroad Co. on October 30, 1939. As soon as the award of October 30, 1939, was made on the claims of the Lehigh Valley Railroad Co., the Z. & F. Assets Realization Corporation attempted to enjoin the Secretary of the Treasury from paying the Lehigh Valley Railroad Co. award. On October 31, 1939, the Z. & F. Assets Realization Corporation filed an action in the District Court of the United States for the District of Columbia against the Secretary of State and the Secretary of the Treasury to enjoin both the certification of the award and payment to the Lehigh Valley Railroad Co. Before there was service of summons or complaint against the Secretary of State he had certified the award covering the Lehigh Valley Railroad Co. claims to the Secretary of the Treasury. In its complaint the

1006

Z. & F. Assets Realization Corporation contended that the Mixed Claims Commission had no power to act on October 30, 1939, because of the withdrawal of the German commissioner, and that the award and decree of October 30, 1939, of the Mixed Claims Commission in favor of the Lehigh Valley Railroad Co. which was made by the Commission, consisting of the United States commissioner and the umpire, was null and void. The Z. & F. Assets Realization Corporation contended, further, that it would not receive payment *in full* of its award if the award in behalf of Lehigh Valley Railroad Co. should be paid. The District Court of the United States dismissed the action with respect to the Secretary of State because he had already certified the Lehigh Valley Railroad award to the Secretary of the Treasury before service of the complaint upon him, so that the complaint as to him was moot; and held that the court had no power to act in the matter of which the Z. & F. Assets Realization Corporation complained, because the question of whether or not the Lehigh Valley Railroad claims were properly allowed by the Mixed Claims Commission was a question to be raised by the United States Government, and the United States District Court had no power to set aside the judgment of the Mixed Claims Commission. The United States District Court granted the motions of the Secretary of State and of the Secretary of the Treasury to dismiss the complaint and bill of intervention. The District Court's decision was rendered on January 6, 1940.[6]

The above action brought by the Z. & F. Assets Realization Corporation was against Cordell Hull, Secretary of State, and Henry Morgenthau, Secretary of the Treasury, to enjoin them from paying to the Lehigh Valley Railroad Co. and others awards made by the Mixed Claims Commission. The Lehigh Valley Railroad Co. was not a party against which the Z. & F. Assets Realization Corporation brought suit. However, after the filing of the suit the Lehigh Valley Railroad Co. and others intervened and filed a bill of intervention and moved for a summary judgment dismissing the complaint and bill of intervention, and counsel appeared for the intervener-defendant.

The Z. & F. Assets Realization Corporation appealed from the action taken by the District Court to the United States Court of Appeals for the District of Columbia. On June 3, 1940, the Court of Appeals affirmed the orders of the District Court.[7]

On October 14, 1940, the United States Supreme Court granted a writ of certiorari, and allowed appeal of the Z. & F. Assets Realization Corporation from the decision of the Court of Appeals. On October

[6] See *Z. & F. Assets Realization Corporation* v. *Hull,* 31 Fed. Supp. 371.
[7] See *Z. & F. Assets Realization Corporation* v. *Hull,* 114 Fed. (2d) 464.

6, 1941, the Supreme Court affirmed the decision of the Court of Appeals.[8]

On January 7, 1941, petitioner Lehigh Valley Railroad Co. executed a release to the Secretary of the Treasury in which it released him and his officers and agents from any and all actions, causes of actions, suits, costs, claims, and demands whatsoever, in law and in equity which Lehigh Valley Railroad had or might have:

* * * by reason of any alleged delay in the payment to the undersigned on account of the Award heretofore made in favor of the United States on its behalf by the Mixed Claims Commission—United States and Germany—and certified to the Secretary of the Treasury by the Secretary of State on October 31, 1939, occurring during the pendency of certain litigation instituted in the District Court of the United States for the District of Columbia in a cause entitled Z & F Assets Realization Corporation, the plaintiffs * * * vs. Cordell Hull, Secretary of State, [et al], * * * and while said cause was pending in the said District Court and while it was later pending in the United States Court of Appeals for the District of Columbia, and in the Supreme Court of the United States, and down to the date of the payment of the award.

The issue in this proceeding relates only to the payments made by the Secretary of the Treasury to petitioner on January 10 and April 5, 1941. The parties have stipulated that counsel fees, the "commissions" of the Government, and other expenses of petitioner incident to obtaining the award, which were allocable to the payments made on January 10 and April 5, 1941, amounted to $4,948,192.03; and that the net balance of the two payments in the amount of $5,117,098 constituted income to petitioner.[9]

The Secretary of the Treasury made another payment under the award to the petitioner on October 20, 1941, in the amount of $168,-019.68. The net amount of this payment after the commission of the Government was $167,179.58. This payment represented interest on the principal amount of the award and is not in issue in this proceeding.

At the end of 1941 the Secretary of the Treasury had paid the gross sum of $10,233,309.71 to petitioner upon the Mixed Claims Commission award.

Petitioner did not report in its return for 1941 the payments made by the Secretary of the Treasury on January 10 and April 5, 1941.

[8] See *Z. & F. Assets Realization Corporation* v. *Hull*, 311 U. S. 470.

[9] In a proceeding before the United States Board of Tax Appeals, *Lehigh Valley Railroad Co.*, Docket Nos. 38892 and 62245, the Board of Tax Appeals held that petitioner was entitled to deductions in each of seven years, 1920 to 1927, on account of the losses sustained resulting from the Black Tom Terminal disaster. See memorandum findings of fact and opinion entered on August 8, 1939, 8 B. T. A. Memorandum Decisions, 39–611; par. 39, 381 (Prentice-Hall, Inc.). The stipulation of the parties that the payments of January 10 and April 5, 1941, by the Secretary of the Treasury resulted in realization of income to petitioner in the amount of $5,117,098, is based upon the effect of recoveries after the allowance of loss deductions in earlier years.

It reported, however, the third payment made by the Secretary of the Treasury on October 20, 1941.

In determining the deficiency in petitioner's income tax liability for the year 1941, the respondent added to petitioner's taxable income the sum of $5,117,098, and gave the following explanation:

It is held that you realized taxable income of $5,117,098 in the year 1941 by reason of an award made by the Mixed Claims Commission in connection with the Black Tom explosion case. Since no part of the aforesaid gain was included in taxable income on your return for such year, the full amount thereof has been added to the gross income in accordance with the provisions of section 22 (a) of the Internal Revenue Code.

### OPINION.

Petitioner keeps its books and makes its returns under the accrual method of accounting. The losses from the Black Tom Terminal disaster in 1916 accrued in several years from 1920 to 1927, and deductions were allowed in those years. Petitioner had made claims to the Government of the United States against the Government of Germany, alleging that the Black Tom disaster had been caused by sabotage agents of that Government, but Germany denied all liability. These claims, presented to the Mixed Claims Commission by the Government of the United States, gave rise to a dispute between the two Governments. The claims against Germany were legally the claims of the United States, made in behalf of its national, so that petitioner was a beneficiary of the claim. The disputed claim was adjudicated by an international commission. When the Commission entered its judgment and decree in favor of the United States on October 30, 1939, petitioner, the beneficiary, could turn to the provisions of the Settlement of War Claims Act of 1928, by which the Congress had provided for the payment and liquidation of awards of the Mixed Claims Commission. Certain conditions of payment of awards of that act were fulfilled in 1939: (1) Certification of the award by the Secretary of State, and (2) the filing of application for payment with the Secretary of the Treasury by petitioner. The award provided reparation to petioner for losses. Income would be realized by petitioner from payment of the principal amount of the award because it had accrued and deducted its losses in earlier years.

The broad question is whether income accrued to petitioner in 1939 upon certification of the Mixed Claims Commission award by the Secretary of State on October 31, 1939. The question involves the litigation which the Z. & F. Assets Realization Corporation instituted in 1939. Determination of the general question requires consideration of several narrow and close questions which are set forth hereinafter.

Certain preliminary matters require clarification, and are discussed first, as follows:

Although the award of the Commission was for a principal amount, $9,900,322.77, plus interest from January 5, 1920, to the date of payment, the pleadings in this proceeding limit the question to the accrual of income based upon the principal amount of $9,900,322.77 only.

Respondent does not dispute one phase of the general question of accrual, namely, whether there were funds in the special deposit account in the Treasury on October 31, 1939, to cover payment of the principal amount of the award. By his answer to petitioner's pleading on this point, respondent has admitted [10] that there were sufficient funds on deposit to cover payment of the principal amount.

The parties have filed a stipulation, which has been set forth in the findings of fact, that on October 31, 1939, there were funds in the German special deposit account equal to the amount of the first two payments on the award (the payments on January 10 and April 5, 1941, in the total amount of $10,065,290.03).

This proceeding involves petitioner's income tax liability for the year 1941, but the year 1939 is also involved by reason of application of the provisions of section 122 (b) (2) of the Internal Revenue Code, which allows the carrying over of the excess of net operating loss of one year to the second succeeding year. The determination of the question either way affects the amount of petitioner s income tax for 1941. Also, the time for making assessments of income and profits taxes for the years 1939 and 1940 has been extended by the execution of the proper consents under section 276 (b) of the Internal Revenue Code.[11]

Petitioner contends that income under the Mixed Claims Commission award of 1939 accrued in 1939, when the Secretary of State certified the award to the Secretary of the Treasury. Petitioner, in its contention, relies upon the provisions of the Settlement of War Claims Act of 1928. 45 Stat. L. 254 (1928). Part of section 2 of that act

---

[10] Respondent, in his answer, admitted as follows:

"* * * it is admitted that the funds available to the aforesaid German special deposit account on October 30, 1939, were greater than the principal amount of the award to the petitioner."

[11] The amount of the net operating loss carry-over of 1939 to 1941 was $2,618,880, under the respondent's determination that income from the Mixed Claims Commission award did not accrue in 1939, and respondent has allowed petitioner a deduction in this amount from its net income for 1941. Under petitioner's contention that income from the award accrued in 1939, there would not be any net operating loss in the year 1939, and, correspondingly, there would not be any deduction from 1941 income for any net operating loss carry-over.

is set forth in the margin.[12]  Petitioner relies upon the following authorities: *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290; *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182; *Jamaica Water Supply Co.* v. *Commissioner*, 125 Fed. (2d) 512; *Franklin County Distilling Co.* v. *Commissioner*, 125 Fed. (2d) 800; *Automobile Insurance Co. of Hartford* v. *Commissioner*, 72 Fed. (2d) 265; *Dumari Textile Co.*, 47 B. T. A. 639; *Estate of G. A. E. Kohler*, 37 B. T. A. 1019.

Respondent has determined that no income accrued until 1941, when the Supreme Court entered its decision in the litigation instituted by the Z. & F. Assets Realization Corporation.  He has determined that income was realized in the amount of $5,117,098.  There is no dispute as to the amount.  The substance of respondent's contention is that the Z. & F. Assets Realization Corporation litigation introduced an element of contingency in the matter of petitioner's right to payments under the award which was not removed until 1941 and which prevented accrual of income in 1939.

We find no case in which the question of the accrual of income was decided where similar facts and situation were involved other than *Automobile Ins. Co. of Hartford* v. *Commissioner, supra*.  The factors which are unique and special to this proceeding are as follows: (1) The claim of the petitioner was tried by an international commission from which there was no appeal.  (2) Liquidation of the Commission's award, of which petitioner was a beneficiary, was governed by the provisions of an act of Congress enacted for the purpose of providing for payments of such awards, *inter alia*, and under this act there was no dispute between petitioner and either the Secretary of the Treasury or the Secretary of State.  (3) The litigation which gives rise to the issue in this proceding was instituted by a corporation which had no interest in the *award* of the Mixed Claims Commission of which petitioner was a beneficiary, so that the party instituting the litigation was an "outsider" to the issue which was before the Mixed Claims Commission and to the award which was certified, on October 31, 1939, by the Secretary of State; and its dispute was with the

---

[12] CLAIMS OF NATIONALS OF THE UNITED STATES AGAINST GERMANY.

*　　　　*　　　　*　　　　*　　　　*　　　　*

SEC. 2. (a) The Secretary of State shall, from time to time, certify to the Secretary of the Treasury the awards of the Mixed Claims Commission, United States and Germany, established in pursuance of the agreement of August 10, 1922, between the United States and Germany (referred to in this Act as the "Mixed Claims Commission").

(b) The Secretary of the Treasury is authorized and directed to pay an amount equal to the principal of each award so certified, plus the interest thereon, in accordance with the award, accruing before January 1, 1928.

(c) The Secretary of the Treasury is authorized and directed to pay annually (as nearly as may be) simple interest, at the rate of 5 per centum per annum, upon the amounts payable under subsection (b) and remaining unpaid, beginning January 1, 1928, until paid.

Secretary of State over the exercise of his authority and duty under the Settlement of War Claims Act.

Respondent does not make any serious contention that the general question whether income under the Mixed Claims Commission award accrued to petitioner in 1939 is not controlled by *Automobile Ins. Co. of Hartford* v. *Commissioner*, *supra*, in the absence of the special factor of the litigation of the Z. & F. Assets Realization Corporation which is involved in this case. We have cited that case with approval in many instances and we think it is applicable here.

The special question in this proceeding is whether the *right* of petitioner to receive payments under the award out of the German special deposit account in the United States Treasury was contingent in 1939 by virtue of the litigation instituted in that year by the Z. & F. Assets Realization Corporation against the Secretary of State and the Secretary of the Treasury. The amount of the award was fixed in 1939. The facts, to which the parties are agreed, show that in 1939 petitioner had ground for a reasonable expectation that the principal amount of the award would be paid in due course. Thus, certain factors which ordinarily must be considered under the general question at issue do not require consideration.[13] These factors are favorable to petitioner's contention. However, the *right* to receive income must be established in a taxable year in order to accrue the income. In *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, the test of the accrual of income was stated as follows:

"* * * Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues.

The Z. & F. Assets Realization Corporation contended in its suit, first, that the Mixed Claims Commission's award on the claims of Lehigh Valley Railroad Co. were null and void; and, second, that the Secretary of State should be restrained from certifying the award and the Secretary of the Treasury should be restrained from making payment.

The right of petitioner to reparations payments from the Government of Germany was established, in the first instance, by the decision

[13] In *Estate of G. A. E. Kohler,* 37 B. T. A. 1019, 1029, the rule was stated as follows:

"Income accrues when the amount of it and the right to it are fixed, provided the right is not contingent, and provided that there is a reasonable expectation that payment will be made in due course. *Continental Tie & Lumber Co.* v. *United States,* 286 U. S. 290; *Automobile Insurance Co.* v. *Commissioner,* 72 Fed. (2d) 265; *Bettendorf Co.,* 34 B. T. A. 72; *Corn Exchange Bank* v. *United States,* 37 Fed. (2d) 34; *United States* v. *Anderson,* 269 U. S. 422."

In *Lichtenberger-Ferguson Co.* v. *Welch,* 54 Fed. (2d) 570, 572, it was said: "Under the accrual system of accounting, where an item is definitely ascertainable as to its amount, and acknowledged to be due, it has 'accrued.' "

of October 30, 1939, of the Mixed Claims Commission. Although the German commissioner was no longer a member of the Commission when the decision was made, having withdrawn on March 1, 1939, and the decision was signed by the American commissioner and the umpire, the treaty under which the Commission was created provided that an umpire selected by the two Governments was authorized "to decide upon any cases concerning which the commissioners may disagree, or upon any points of difference that may arise in the course of their proceedings." (Art. II, Claims Agreement, Aug. 10, 1922, 42 Stat. 2201.) The treaty provided, further, in article VI, as follows: "The decisions of the commissioners and those of the umpire (in case there may be any) shall be accepted as final and binding upon the two Governments." The German Government, in spite of the provisions of the treaty, authorizing decision of a case by the umpire, protested to the Secretary of State against the decision of the umpire in the case of the Lehigh Valley Railroad claims, but the Secretary of State rejected the protest. See page 474 of the opinion of the Court of Appeals, 114 Fed. (2d) 464, and pages 484 and 486 of the opinion of the Supreme Court, 311 U. S. 470. Thus, the Government of the United States during 1939 treated the procedure of the umpire as proper and valid under the treaty and stood upon the terms of the treaty itself. Under the treaty, the Commission had power to determine the amount to be paid by Germany in satisfaction of its obligations. All of this was prior to certification of the award by the Secretary of State on October 31, 1939.

The Z. & F. Assets Realization Corporation had no standing to challenge the validity of the Mixed Claims Commission award on the claims of Lehigh Valley Railroad, and of which the railroad company was a beneficiary. Any dispute over the validity of the Mixed Claims Commission's procedures and decree had to be, exclusively, a dispute between the Governments of the United States and Germany, and a private party, such as the Z. & F. Assets Realization Corporation, could not carry on a controversy of the German Government in a court of the United States for any purpose. The judiciary could not interfere in any dispute between the two governments. The law on this question was fully set forth by the Circuit Court of Appeals in *Z. & F. Assets Realization Corporation* v. *Hull, supra* (footnote 7), which held that the proceeding before the court was not a justiciable case. The Supreme Court did not find any error by the Circuit Court of Appeals in its reasoning, as far as it went, even though the Supreme Court based its decision upon another ground. On the question of whether the Z. & F. Assets Realization Corporation had standing to bring suit, the Supreme Court held that it did not, "Except for the situation created by the Settlement of War Claims Act of

1928." (311 U. S. 485.) The concurring justices would have affirmed the Court of Appeals on the ground upon which it had reached its decision, namely, "on the ground that the petitioners set up no justiciable controversy which the court had power to determine." They said (p. 490) :

\* \* \* The questions raised by the petitions involve relations between the United States and Germany, which we believe are constitutionally committed exclusively to the legislative and executive departments.

The Supreme Court, in the majority opinion, took the view that the litigation instituted by the Z. & F. Assets Realization Corporation presented a question under the Settlement of War Claims Act "with respect to the effect that should be given under the terms of the statute to the action of the Secretary of State in certifying the awards" (p. 486). On the question of whether the Z. & F. Assets Realization Corporation had any standing to sue, the Supreme Court held that it was entitled to protect such interests as it had, as a holder of an award, in the German special deposit account in the Treasury under the act, but that it was bound by the terms of the act, and could not succeeed in a challenge of payments to others for which the act provided.

The Supreme Court found that the Secretary of State had given certification of the Mixed Claims Commission award on the railroad company's claims which was adequate in form and substance under the act. It then considered the nature of the certification under the act, and rejected the contention that the certification was a "mere ministerial act." It concluded that the Congress could :

\* \* \* look to the Secretary of State for the exercise of his appropriate authority on behalf of the Executive and thus for his judgment upon the question whether the proceedings [before the Mixed Claims Commission] had been such as duly to qualify the awards for payment.

The court concluded, in substance, that the Secretary of State, in certifying the award of the Commission on the railroad company's claims, had passed upon the validity of the award, with due consideration of the contention of Germany that the award was invalid, as the Z. & F. Assets Realization Corporation also was contending in its suit, and had determined that the award was valid.

As to the question whether the Secretary of the Treasury could make payment of the award upon the Secretary of State's certification, the Supreme Court held as follows (p. 489) :

We are of the opinion that for the purpose of payment under the statute [Settlement of War Claims Act] the certificate of the Secretary of State must be deemed to be *conclusive.* We do not need to consider whether Congress could commit to the judiciary the determination of the validity of the challenged claims [those in behalf of Lehigh Valley Railroad Co.] \* \* \*, for Congress

has not done so *but has made payment out of the fund depend upon the Secretary's certificate.* The question in this relation is simply one of the intent of Congress as disclosed by the Act. Congress has expressly directed payments to be made from the special account of the awards "so certified." *The literal and natural import of this provision is that finality is to be accorded to the certificate of the Secretary of State and we perceive no ground for limiting the terms of the Act by construction.* [Italics added.]

It is clear from the Supreme Court's opinion in the *Z. & F. Assets Realization Corporation* case, that the right of petitioner under the Mixed Claims Commission award of October 30, 1939, was finally determined by the Secretary of State on October 31, 1939, by and upon his certification of the award as one which could be paid by the Secretary of the Treasury. The Supreme Court held that his certification was final and "conclusive" [14] upon the question of the validity of the award; that the Settlement of War Claims Act conferred upon the Secretary of State final power to determine the validity of the awards of the Mixed Claims Commission; that the certification by the Secretary of State was not subject to judicial review. See discussion of the Supreme Court's decision in 54 Harvard Law Review 877, and 9 George Washington Law Review 967. The Supreme Court accepted the ruling of the Secretary of State in the executive branch of the Government on a political matter as the rule of the case to be followed by the courts. See *Ricaud* v. *American Metal Co.*, 264 U. S. 304, 309. Upon this ground, the Supreme Court affirmed the District Court's summary judgment dismissing the complaint of the Z. & F. Assets Realization Corporation and the bill of intervention which had been filed by petitioner. The District Court had based its decision upon the same reasoning as the Supreme Court applied.[15]

The question we have to decide is whether the litigation which the Z. & F. Assets Realization Corporation instituted after the Secretary of State had certified the award, the suit having been filed on the same day, constituted a contingency upon which petitioner's *right* under the award depended, so as to postpone the fixing of petitioner's right until some time after 1939. Did the Z. & F. Assets Realization Corporation litigation prevent accrual of a right to receive payment of

[14] See 8 Words and Phrases 365. The term "conclusive," in its primarily legal meaning, means beyond question or dispute. It means, also, final; without right of appeal.

[15] The District Court for the District of Columbia had held as follows (31 Fed. Supp. 371, 373) :

"* * * The act of Congress of March 10, 1928, directed the Secretary of State to certify from time to time to the Secretary of the Treasury the awards of the Mixed Claims Commission and directed the Secretary of the Treasury to pay out these amounts. The Secretary of State has certified to the Secretary of the Treasury the award of which the plaintiff complains, and under the terms of the act of Congress it is the duty of the Secretary of the Treasury to pay the award. It is true that the plaintiff claims * * * that the award was not made by the Commission, as the Commission could not function after one of the commissioners had resigned, but so far as the fund in the Treasury of the United States is concerned, the question was one to be decided by the Secretary of State, and whether he decided rightly or wrongly the court cannot prevent the payment of the claim."

an award under the rule as expressed in *Estate of G. A. Kohler, supra,* that "income accrues when the amount of it and the right to it are fixed, provided the right is not contingent"?

Apart from the Z. & F. Assets Realization Corporation litigation, the right of petitioner to payment under a Mixed Claims Commission award was subject to one contingency under the Settlement of War Claims Act, namely, certification of the award by the Secretary of State. But before the end of 1939 that contingency had been removed, and under the act petitioner's right to receive payment was no longer subject to the statutory condition of payment.

Prior to the enactment of the Settlement of War Claims Act of 1928, there was no procedure, statutory or executive, for determining the right of a national to receive payment of a Mixed Claims Commission award. An award was for the benefit of a national, but, strictly speaking, the beneficiary had no *right* under the award because it was made to the Government of the United States. It was necessary for the Congress to provide the means for the fixing of a right in the beneficiary to receive payment, and the Congress did so by statute. After enactment of the Settlement of War Claims Act, its provisions determined the rights of a national to payment under an award.

The question of accrual of income under a Mixed Claims Commission award must be determined by the provisions of the Settlement of War Claims Act. The question in this proceeding is, therefore, closely similar to that in other cases where accrual was determined by the provisions of a statute.

In *Lichtenberger-Ferguson Co.* v. *Welch,* 54 Fed. (2d) 570, the right of a contractor to payments under a war supplies contract with the Government which was canceled by the Government after the Armistice in the First World War was determined by the provisions of the Act of March 2, 1919, an act to provide relief in cases of contracts connected with the prosecution of the war. 40 Stat. 1272 (Part 1). Under that act the Secretary of War was empowered to adjust or pay on a fair basis contracts entered into with the Government in connection with the war. The War Department allowed the contractor an award in adjustment of his canceled contract, which was given *final approval* on August 29, 1919, but was not paid until February 5, 1920, because of some delays occasioned by disbursing officers of the War Department. Under the act there involved the approval given to the award was *final.* The Circuit Court of Appeals held that the payment *accrued* when final approval was given and that "the taxpayer could not by any form of entry on its books change the item from its then accrued form." Upon further consideration of the question under remandment to the District Court, the court said in *Lichtenberger-Ferguson Co.* v. *Welch,* 14 Fed. Supp. 396:

\* \* \* the vital and essential event necessary to the "accrual" of the claims against the War Department did not occur in 1918 or in 1920, but happened in August, 1919, when, as shown by Plaintiff's Exhibit 13, the claim was definitely approved by authority of the Secretary of War.

\* \* \* Judge James in the opinion succinctly stated that

Under the accrual system of accounting, where an item is definitely ascertained as to its amount, and acknowledged to be due, it has "accrued."

The times of disbursements or of bookkeeping entries in the books of the plaintiff company, or of the payment of the claim by the War Department, are not the test by which this court is to determine when the item in question "accrued." It is the acknowledgment of the claim and the allowance of it in August, 1919, that constitute the "accrual" of the claim for income tax purposes under the applicable Revenue Acts of the United States.

\*        \*        \*        \*        \*        \*        \*

Every event necessary and essential in the process from which liability became fixed happened \* \* \* entirely during that calendar year [1919].

In *Continental Tie & Lumber Co.* v. *United States*, 52 Fed. (2d) 1045; affd., 286 U. S. 290, the right of an owner of a railroad to certain compensation for losses during a period of Government operation of its railroad from December 28, 1917, to June 3, 1918, was held to have been established by section 204 of the Transportation Act of 1920, approved on February 28, 1920, 41 Stat. 456. There a deficit in operations was sustained during the period of Federal operation, the amount of which was to be measured by comparison with a test period of normal operations, with all of which the taxpayer had knowledge. Prior to the enactment of the Transportation Act of 1920, no right existed in the taxpayer to receive reimbursement for its loss during the Federal operation period. The Court of Claims held that the right to receipt accrued under the provisions of the Transportation Act on March 1, 1920, the termination date of the period of Federal control. There was delay, until 1923, in payment by the Interstate Commerce Commission, but there was "no substantial dispute between the plaintiff and the Interstate Commerce Commission as to its claim." The Court of Claims observed that "The accrual system of accounting, as it has always been applied, requires time for computation and adjustment," and the court ruled that the delay in payment did not postpone accrual of the item, but that the item accrued when the right to receipt was fixed by the statute. The Supreme Court affirmed the holding of the Court of Claims, stating:

The right to the award was fixed by the passage of the Transportation Act. What remained was mere administrative procedure to ascertain the amount to be paid. Petitioner's right to payment ripened when the Act became law. \* \* \* Subsequent to its order of June 10, 1920, the Commission made no amendment or alteration of its rules with respect to the information to be furnished under section 204. Obviously the data had to be obtained from the railway's books and accounts and from entries therein all made prior to March

1, 1920. These accounts contained all the information that could ever be available touching relevant expenditures.

\* \* \* \* \* \* \*

The case does not fall within the principle that, where liability is undetermined in the tax year, the taxpayer is not called upon to accrue any sum. \* \* \*

In *Dumari Textile Co.*, 47 B. T. A. 639; affd., 142 Fed. (2d) 897, the question was whether a refund of tax on floor stocks held on January 6, 1936, accrued in 1936 under the provisions of section 602 of the Revenue Act of 1936. In 1936 the taxpayer filed claim for payment, but the Commissioner did not pay the claim until 1938. We held that the terms of the applicable statute fixed the taxpayer's right to receive payment, and that the item accrued in 1936 because "Everything had happened which could have happened from which to determine the amount of the payment." (P. 644.) Applying the rule of *Continental Tie & Lumber Co.* v. *United States, supra,* we held that "petitioner's right to receive the payments in question was fully ripened on June 22, 1936, the date section 602 became law \* \* \*." The Circuit Court of Appeals, in affirming our holding, stated:

But there can be no doubt that the *statute* fixed the total amount of recoupment from all sources to which the claimant was entitled on January 6, 1936. [Italics added.]

In *Georgia School-Book Depository, Inc.*, 1 T. C. 463, it was held that commissions accrued to a distributor of books to the State of Georgia under a contract with the state in the fiscal year ended March 31, 1938, when "the right to commissions had accrued by the performance of its duties," even though actual payment of the commissions could not be made until a later year because of lack of funds.

In *Frost Lumber Industries* v. *Commissioner*, 128 Fed. (2d) 693, reversing 44 B. T. A. 1249, it was held that profit accrued from a sale of land to the Government in 1935, when the Department of Agriculture made election to purchase land at a stated price per acre, rather than in 1936, when payment was made. In that case the Act of March 1, 1911, 36 Stat. 961, authorized the Secretary of Agriculture to purchase such lands as had been approved for purchase by the National Forest Reservation Commission at the price fixed by the Commission. On August 23, 1935, the National Forest Reservation Commission notified the Frost Lumber Industries that the purchase of its land had been approved at $6.25 per acre, and that the Department of Agriculture elected to purchase the land under the provisions of the Act of March 1, 1911. The vendor executed and recorded a deed to the United States on December 13, 1935. There remained various matters to be done before payment could be made, but the Circuit Court of Appeals found that the contract for purchase was completely closed in 1935 under the provisions of the act which authorized purchase. The Circuit Court stated:

When the petitioner was notified that the Department of Agriculture elected to purchase, and the deed was recorded all that was necessary to fix the obligation of the parties was done. Tender of payment was not a condition precedent to acceptance of the option; notice of its acceptance converted it into a bilateral contract binding on all of the parties.

In this proceeding, all of the events necessary under the provisions of the Settlement of War Claims Act for the payment of the Mixed Claims Commission award to petitioner occurred in 1939. Under the provisions of that act, petitioner's "right to payment ripened" when the Secretary of State certified the award to the Secretary of the Treasury. The certification of the award by the Secretary of State was the *final determination* of petitioner's right to payment under the act, from which there was no right of review. The Supreme Court held in the appeal of the Z. & F. Assets Realization Corporation that the certification of the Secretary of State was final and conclusive, and not subject to review by virtue of the provisions of the Settlement of War Claims Act. The authorities which have been cited above involved the question of accrual of income under circumstances which are closely akin to the situation in this proceeding, in that the provisions of various statutes furnished the test of the time when items of income accrued. As was pointed out in *Lichtenberger-Ferguson Co.* v. *Welch*, *supra*, when the award was allowed under the pertinent statute, the item accrued, notwithstanding delays in payment thereof. The Z. & F. Assets Realization Corporation litigation may have delayed payment of the award to petitioner, but it did not affect the finality of the Secretary of State's action under the Settlement of War Claims Act.

The Z. & F. Assets Realization Corporation, as the beneficiary of an earlier and entirely different award, was bound by the provisions of the act under section 2 (i), which provided that: "Any person who makes application for payment under this section shall be held to have consented to all of the provisions of this Act." It is our understanding that it had made application for payment under the act and, therefore, had bound itself under the above provision. The Supreme Court observed that it could not escape the provisions of the act.

We think it is clear from the *rationale* of the Supreme Court's opinion, that the Supreme Court expressly refrained from passing upon the question of the right of petitioner to receive payment under the Secretary of State's certification of its award, and held, only, that the certification was final and not subject to review, and affirmed dismissal of the suit.

Since the certification by the Secretary of State of the Lehigh Valley Railroad award was final under the act, the dispute of the Z. & F. Assets Realization Corporation amounted to no more than a claim for priority in payment out of the German special deposit account. It

did not, in our opinion, involve a claim which put into real dispute the *right* of petitioner to payment under its award under the Settlement of War Claims Act. Cf. *Jamaica Water Supply Co.* v. *Commissioner*, 125 Fed. (2d) 512.

Neither did the Z. & F. Assets Realization Corporation dispute raise any real contingency as to the *amount* which petitioner could reasonably expect to receive under the Secretary of State's certification. Cf. *Luckenbach Steamship Co.*, 9 T. C. 662. The Settlement of War Claims Act, in section 5, provided for the prorating of payments of awards out of the special deposit fund among award holders, and authorized the Secretary of the Treasury to determine the amounts of the pro rata payments upon the unpaid balances of all awards, in his own judgment. Section 8 (a) provided that decisions of the Secretary of the Treasury as to payments out of the fund "shall be final and conclusive, and shall not be subject to review by any other officer of the United States * * *." The Z. & F. Assets Realization Corporation was bound by this provision of the act. Also, it could not anticipate in 1939 how the Secretary of the Treasury would exercise his discretion in prorating payments out of the special deposit account among all award beneficiaries, including both the Lehigh Valley Railroad and the Z. & F. Assets Realization Corporation. The suit instituted by the Z. & F. Assets Realization Corporation raised no contingency itself as to the amounts of the installments which the Secretary of the Treasury would pay petitioner under the award, because, without any complaint or suit by the latter corporation, the act provided for a prorating of payments among award holders. That provision in the act did not, however, lessen or destroy the reasonable expectation which petitioner had on October 31, 1939, to receive, in due course, payment of the *principal amount* of its award, as has been shown at the outset. See *Automobile Insurance Co. of Hartford* v. *Commissioner, supra*; and *Franklin County Distilling Co.* v. *Commissioner*, 125 Fed. (2d) 800, 803, where the court said:

Where income tax returns are made by the taxpayer on an accrual basis, there need not be certainty but only reasonable accuracy, in calculating an amount to be received, in order to bring that amount within taxable income. *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290.

Respondent has not made any serious contention that the Z. & F. Assets Realization Corporation litigation raised a contingency as to the *right* of petitioner to receive payment under the Settlement of War Claims Act. Rather, his argument is directed toward the other phase of the question, the petitioner's reasonable expectation of receiving payment of the award, and the argument which he advances here is the same as he made in *Automobile Insurance Co. of Hartford* v. *Commissioner, supra*, the Z. & F. Assets Realization Corporation

litigation being only an additional factor in his argument in this proceeding. The argument was rejected in the *Automobile Insurance* case, and there is no doubt that the court in that case gave consideration to the point that the special deposit account in the Treasury would be subject to the claims of many award holders.

We must conclude that the Z. & F. Assets Realization Corporation litigation was ineffective to stay accrual of the item in question in 1939 under the Settlement of War Claims Act. We are directed to this conclusion by the principle which underlies the accrual method of reporting income most recently stated in *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281, which denies to both the Government and the taxpayer the privilege of alloting income to a year other than "the year in which the right to receive, or the obligation to pay, has become *final* and definite in amount." (Italics added.) Petitioner's right under its award was finally determined, as a matter of statutory mandate, by the certification of the Secretary of State. The finality of his determination was in accord with constitutional principles which the Congress applied in the provisions of the Settlement of War Claims Act, and which bound to the Government of the United States the beneficiaries of all awards under which the obligor was a foreign government. From the determination of the Secretary of State, there was no right of appeal to our courts. Since our courts were bound to accept the ruling of the Secretary of State, the attempt to obtain judicial review on the part of the Z. & F. Assets Realization Corporation failed to put in issue a question relating to petitioner's right under the Settlement of War Claims Act in the sense that litigation ordinarily tests and determines rights, and, therefore, should not be recognized as a contingency which stayed accrual. Under these special circumstances, we conclude that the income accrued in 1939 upon the certification of the award by the Secretary of State.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*