BURTON-SUTTON OIL COMPANY, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110566.   Promulgated August 4, 1944.

*Wright Matthews, Esq.*, for the petitioner.

*Frank B. Schlosser, Esq.*, and *L. R. Van Burgh, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: We shall consider the issues in the order previously stated.

*Issue No. 1.*—Should the amounts of $17,406.19, $232,498.94, and $286,128.28 paid by petitioner to Gulf during the taxable years 1936, 1937, and 1938, respectively, be excluded from petitioner's income? These amounts were paid pursuant to paragraph 3 of the February 18, 1933, contract between Sutton and Gulf, which contract petitioner acquired from Sutton on or about February 27, 1933. In *Anderson* v. *Helvering*, 310 U. S. 404, the Supreme Court said:

It is settled that the same basic issue determines both to whom income derived from the production of oil and gas is taxable and to whom a deduction for depletion is allowable. That issue is, who has a capital investment in the oil and gas in place and what is the extent of his interest.

The respondent determined and contends that under the contract of February 18, 1933, Gulf sold all of its "oil and gas rights, titles, interests or privileges" in the lease "in consideration of Ten Dollars ($10.00) and other valuable considerations" part of which consisted of the "50% of the remaining portion of said proceeds of the oil and/or gas produced and sold from the said land" provided for in paragraph 3 of the contract. In other words, the respondent determined and contends that the above amounts paid to Gulf represent a part of petitioner's "capital investment in the oil and gas in place" and as such should be added to petitioner's cost basis of the lease. On that theory the respondent has included in petitioner's gross income all the income derived by it from the production and sale of oil and gas from the lease, exclusive of the original oil royalty and the overriding oil royalty concerning which there is no dispute, and has allowed petitioner deductions for depletion of "27½ per centum of the gross income from the property" under section 114 (b) (3) of the Revenue Acts of 1934 and 1936.[1]

---

[1] The above amounts paid to Gulf, which were determined by the respondent to represent capital expenditures and a part of the cost of the lease, were therefore included as a part of petitioner's "gross income" under section 22 (a) of the Revenue Acts of 1934 and 1936, and as a part of petitioner's "gross income from the property" under section 114 (b) (3) for depletion purposes. Cf. *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312; *Sunray Oil Co.*, 3 T. C. 251, 254. The above mentioned deductions for depletion of "27½ per centum of the gross income from the property" were allowed by the respondent for each of the taxable years before us on the ground that the respondent had also determined that such percentage depletion was greater than depletion based on cost under section 114 (b) (1) of the Revenue Acts of 1934 and 1936. The respondent now concedes that if he is correct in his contention that the amounts paid to Gulf represents a part of the cost to petitioner of the lease, then for the year 1938, the depletion based on cost under section 114 (b) (1) is greater than the percentage allowance under section 114 (b) (3), and as a result thereof the parties have stipulated relative to the year 1938 that "If this Court does not permit the petitioner to eliminate from its taxable income the payment of $286,128.23, then the petitioner is entitled to an additional deduction for depletion in the fiscal year ended February 28, 1938 in the amount of $45,754.36." Cf. *North American Oil Consolidated*, 12 B. T. A. 68 (bottom of p. 94 to middle of p. 95), appealed and reversed on other issues, 286 U. S. 417. On the other hand, if we agree with petitioner that the amounts paid to Gulf should be excluded from petitioner's taxable income, then petitioner's allowance for depletion would have to be redetermined and the parties have stipulated that this may be done under Rule 50.

Petitioner contends that the contract of February 18, 1933, was a sublease rather than a sale; that Gulf retained an "economic interest" in the oil and gas in place to the extent of the payments required under paragraph 3 of the contract; and that, therefore, the amounts paid to Gulf under paragraph 3 should be excluded from its income. Among the cases cited by petitioner in support of these contentions are *Thomas* v. *Perkins*, 301 U. S. 655; *Holly Development Co.* v. *Commissioner*, 93 Fed. (2d) 146; and *Marrs McLean*, 41 B. T. A. 565, 573–575 (Gray lease under issue No. 2), affirmed on other issues, 120 Fed. (2d) 942.

Respondent relies upon *Helvering* v. *O'Donnell*, 303 U. S. 370; *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372; *Blankenship* v. *United States*, 95 Fed. (2d) 507; *Anderson* v. *Helvering, supra;* and *Quintana Petroleum Co.*, 44 B. T. A. 624.

We think the facts in the instant proceeding are practically on all fours with those in *Quintana Petroleum Co., supra,* on this issue. In that case respondent relied upon the same authorities as he relies upon here, and we sustained him. In that case the pertinent agreement between the parties provided, among other things, as follows:

\* \* \* If as a result of Trinity's operations on said land, oil and gas should be produced therefrom in paying quantities, then, after paying all of the costs and expenses incurred in drilling, equipping, and operating said well, Trinity shall account to Gulf monthly for one-fourth (¼th) of the net proceeds of such operations.

The agreement then specified the costs and expenses deductible by Trinity in computing the amount of the payments to be made to Gulf Production Co.

In the instant case paragraph 3 of the agreement, by which petitioner was obligated to pay Gulf 50 percent of the net proceeds after deduction of expenses, is in our judgment to all intents and purposes the same as the agreement in the *Quintana Petroleum Co.* case, *supra.* As in that case, the agreement here was followed by a detailed enumeration of the expenses which were to be deducted by petitioner before there was to be a 50 percent division of the net proceeds with Gulf. Thus, as we have already indicated, we see no distinction in substance between the facts of the two cases. On June 27, 1944, since the filing of briefs in this proceeding, the Fifth Circuit affirmed us in the *Quintana Petroleum Co.* case. See *Quintana Petroleum Co.* v. *Commissioner*, 143 Fed. (2d) 588. Therefore, upon the authority of *Quintana Petroleum Co.* v. *Commissioner*, we sustain the respondent's determination upon this issue, and in accordance with the stipulation the petitioner is "entitled to an additional deduction for depletion in the fiscal year ended February 28, 1938, in the amount of $45,754.36." Cf. *Estate of Dan A. Japhet*, 3 T. C. 86.

*Issue No. 2.*—Petitioner contends that the additional corporation franchise taxes for the taxable years 1937 and 1938 asserted by the state in 1940 and paid by petitioner in 1940 actually "accrued" as a liability during the respective taxable years in question and that, since petitioner kept its books on the accrual basis, the taxes so asserted and paid are deductible for the taxable years 1937 and 1938, respectively.

Section 23 (c) of the Revenue Act of 1936 provides that in computing net income there shall be allowed as deductions "Taxes paid or accrued within the taxable year," with certain exceptions, none of which are material here. Section 48 (c) of the same act provides that when used in this title "The terms 'paid or incurred' and 'paid or accrued' shall be construed according to the method of accounting upon the basis of which the net income is computed under this Part." Petitioner's method of accounting was the accrual method.

The respondent concedes that the rule is well established that taxes accrue when all events have occurred that fix the amount of the tax and determine the taxpayer's liability to pay it, citing *Oregon Pulp & Paper Co.*, 47 B. T. A. 772, 780, and the cases therein cited. The respondent contends, however, that petitioner has failed to show that all the events fixing the additional franchise tax liabilities here involved transpired during the years 1937 and 1938, and that, therefore, "there is no basis upon which this Court can permit the accrual and deduction of the taxes in the years 1937 and 1938." We think this contention by respondent can not be sustained.

In *Oregon Pulp & Paper Co., supra,* we held that the taxpayer there could not deduct in 1936, the year of payment, the amount of an additional excise tax demanded from the taxpayer by the State of Oregon for the year 1934. We said there that all events had transpired prior to 1936 which fixed the amount of the liability; that the taxpayer had erroneously computed the amount of its tax to the state; and that the subsequent discovery of the error in 1936 "related back to the taxable year in which the mistake occurred." This is all the petitioner in the instant proceeding is claiming.

The liability for the franchise taxes in question was fixed by laws of the State of Louisiana. Those laws were in force during the taxable years 1937 and 1938. Petitioner had erroneously computed the amount of the liability. The subsequent discovery of the error and the correction thereof in 1940 related back to the taxable years 1937 and 1938, in which years the mistake occurred. *Oregon Pulp & Paper Co., supra,* p. 780. We hold that the amounts of $814.11 and $1,237.83 are allowable deductions for the taxable years 1937 and 1938, respectively, under section 23 (c), *supra.*

*Issue No. 3.*—The question involved in this issue is substantially the same as the one that was recently decided by the Supreme Court in

*Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516. Both parties in their briefs seem to agree that the Supreme Court's decision in that case is controlling. In its brief petitioner concedes that "The income taxes therefore will be deducted under this decision of the Supreme Court when the litigation is finally adjudicated." We hold that the same rule applies also to the interest items in question. Section 23 (b) of the Revenue Act of 1936 provides for the allowance as deductions of "All interest paid or accrued within the taxable year on indebtedness * * *." Here the taxpayer is contending before the Board of Tax Appeals of the State of Louisiana that it is not indebted to the state for the amounts on which the interest is based. We hold that petitioner is not entitled to any deductions for the taxable years 1937 and 1938 on account of either the contested additional income taxes or the interest thereon, the amounts of which are set out in our findings of fact. *Dixie Pine Products Co.* v. *Commisioner*, *supra*.

*Issue No. 4.*—Section 23 (a) of the Revenue Act of 1936, as amended by section 121 of the Revenue Act of 1942, provides that in computing net income there shall be allowed as deductions "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Petitioner contends that the item of $27,564.61 here in question is deductible under this provision of the statute, and cites *Welch* v. *Helvering*, 290 U. S. 111; *L. B. Reakirt*, 29 B. T. A. 1296; affd. *per curiam*, 84 Fed. (2d) 996; *Commissioner* v. *Chicago Dock & Canal Co.*, 84 Fed. (2d) 288; and *Commissioner* v. *Heininger*, 320 U. S. 467.

Section 24 (a) (2) of the Revenue Act of 1936 provides that in computing net income no deduction shall in any case be allowed in respect of "Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." Pursuant to section 62 of the Revenue Act of 1936, the respondent prescribed and published, as a needful regulation for the enforcement of section 24 (a) (2), article 24-2 of Regulations 94, which among other things provides that "The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense." In referring to an identical provision of Regulations 86, the Tenth Circuit, in *Farmer* v. *Commissioner*, 126 Fed. (2d) 542, affirming on this point *Central Material & Supply Co.*, 44 B. T. A. 282, said:

This regulation finds general support in the decisions of the courts. The authorities quite generally hold that expenditures made in defense of a title upon which depends the right to receive oil and gas royalty payments are capital expenditures and not deductible as ordinary business expenses. *Croker* v. *Helvering*, 67 App. D. C. 226, 91 F. 2d 299; *Murphy Oil Co.* v. *Burnet*, 9 Cir., 55 F. 2d 17, 26; *Blackwell Oil & Gas Co.* v. *Commissioner*, 10 Cir. 60 F. 2d 257. Petitioners did more than litigate the right to receive oil royalty payments. The

title to the oil and gas lease under which they received these payments depended upon the title to the land. Without title to the land they had nothing. It was therefore necessary for them to defend and establish the title to the land in order to retain their interest in the oil and gas. The decision of the Commissioner and of the Board in this respect is approved.

To the same effect are *Jones' Estate* v. *Commissioner*, 127 Fed. (2d) 231, and *Moynier* v. *Welch*, 97 Fed. (2d) 471. We think it is true, as stated by the court in *Farmer* v. *Commissioner*, *supra*, that "The authorities quite generally hold that expenditures made in defense of title upon which depends the right to receive oil and gas royalty payments are capital expenditures and not deductible as ordinary business expenses."

While the general rule is as above stated, the Board held in *L. B. Reakirt*, *supra*, that attorney fees paid by a taxpayer engaged in the real estate and investment business in resisting an illegal attempt by a city to condemn and acquire certain of his property are deductible as ordinary and necessary expenses of such business. Our decision in that case was affirmed by the Sixth Circuit, *per curiam*, *supra*. We do not believe that the *Reakirt* case has been overruled by the later decisions which we have cited above. There can be no doubt that suit at law No. 2841 filed by the United States of America in the District Court of the United States for the Western District of Louisiana, described in our findings of fact, was a condemnation suit. If the United States had prevailed against petitioner, who became a party to that suit, all of petitioner's 19 producing oil wells would have been taken. Petitioner employed counsel and defended against the Government's effort to condemn its property upon the ground that its properties were not included in the proper boundaries of the lands which the Government was seeking to condemn. Petitioner prevailed in this contention and judgment was entered by the United States District Court in petitioner's favor. While it is unquestionably true that the principal question involved in the condemnation suit, in so far as the Government and petitioner were concerned, was the correct location of boundary lines, it is also true that the suit was a condemnation suit and that as a result of the judgment petitioner's property upon which its 19 producing oil wells were located was not taken by the United States Government. We think the amounts aggregating $27,564.61 which petitioner expended to prevent its property being taken should be allowed as ordinary and necessary business expenses incurred in resisting condemnation proceedings, under authority of the *Reakirt* case.

The fact that the taxpayer in the *Reakirt* case was engaged in the real estate and investment business, whereas the taxpayer in the instant case is engaged in the production and sale of oil, is, we think, without any important significance. The important factor in each case is

that the expenditures in question were made in preventing the taxpayer's property from being taken in a condemnation proceeding. Article 24-2 of Regulations 94 is not applicable to such a state of facts.

On issue No. 4, petitioner is sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TURNER, *J.*, dissenting: Assuming the soundness of the conclusion reached in *L. B. Reakirt*, 29 B. T. A. 1296, which, in my opinion, is not free from doubt, I am still unable to agree with the majority that that case is decisive of the question in the fourth issue above. The question here is one of property boundary. If the boundary line was located as the petitioner contended, there was no question as to petitioner's title as lessee to the lands on which its oil wells were located, and the property was not within the claim of the Government. If, on the other hand, the boundary line was located as contended by the Federal Government, petitioner had no title as lessee or otherwise to the lands it had developed. It seems to me thus apparent that petitioner's expenditures were in defense of the title to its property and, being such, were capital expenditures and not deductible as ordinary and necessary expenses. *Central Material & Supply Co.*, 44 B. T. A. 282; affd., 126 Fed. (2d) 542; and *Jones' Estate* v. *Commissioner*, 127 Fed. (2d) 231, affirming 43 B. T. A. 691. The fact that the question as to title arose in a condemnation suit is, in my opinion, of no moment. I accordingly note my dissent.

MURDOCK, MELLOTT, ARNOLD, and KERN, *JJ.*, agree with this dissent.