ACF-BRILL MOTORS COMPANY (SUCCESSOR BY MERGER TO AMERICAN CAR AND FOUNDRY MOTORS COMPANY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14256. Promulgated February 24, 1950.

*John E. Hughes, Esq., John W. Hughes, Esq.,* and *Glen W. Watkins, Esq.,* for the petitioner.

*Karl W. Windhorst, Esq.,* for the respondent.

264

266

270

## OPINION.

HILL, *Judge*: *Issue 1.*—The respondent determined that petitioner holds the stock of Hall-Scott and Fageol Ohio with an other than cost

basis prescribed by Regulations 110, section 33.31 (c) (2) (iv) (F). Petitioner, on the other hand, takes the position that it holds the stock of those companies on a cost basis and that its invested capital is properly computed according to the method set forth in Regulations 110, section 33.31 (c) (2) (iv) (G). The respondent states that the various steps involving the formation of petitioner, as described in our findings, meet the statutory tests of section 203 (b) (4) of the Revenue Act of 1926[2] for a nontaxable transaction, and hence, that the basis of the stock of Hall-Scott and Fageol Ohio is the same as it would be in the hands of the transferors, as compelled by section 113 (a) (8) of the Internal Revenue Code.[3]

Petitioner states that "The law is well settled that where a series of related steps are all part of a plan, the various steps of the plan are to be regarded as making up one transaction for the purpose of determining the tax consequences."

So petitioner contends here that the cash purchase of stock of Hall-Scott by American Car & Foundry Co. and Brill on August 29, 1925, should be considered as a purchase by American Car & Foundry Motors Co. even though it did not come into being until December 23, 1925. If we so consider it, one of the tests for a tax-free transfer fixed by section 203 (b) (4) is missing, for that section requires that the "property [must be] transferred to a corporation by one or more persons *solely* in exchange for stock or securities in such corporation." (Italics supplied.)

It is respondent's argument that the acquisition of the stock by the two corporations above mentioned was an independent transaction and, consequently, that the various exchanges which took place upon

---

[2] SEC. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

\*     \*     \*     \*     \*     \*     \*

(b) (4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

[3] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

\*     \*     \*     \*     \*     \*     \*

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

(A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) [formerly section 203 (b) (4) of the Revenue Act of 1926] (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

(B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

the organization of the new company constituted a tax-free transaction under the provisions of section 203 (b) (4) of the Revenue Act of 1926.

With respect to step transactions we stated as follows in *American Bantam Car Co.*, 11 T. C. 397, 405; affd., 177 Fed. (2d) 513:

In determining whether a series of steps are to be treated as a single indivisible transaction or should retain their separate entity, the courts use a variety of tests. Paul, Selected Studies in Federal Taxation, 2d series, pp. 200–254. Among the factors considered are the intent of the parties, the time element, and the pragmatic test of the ultimate result. An important test is that of mutual interdependence. Were the steps so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series?

We do not believe that under the circumstances of this case the legal relations created by the transaction involving the purchase by American Car & Foundry Co. and Brill of 667 shares of Hall-Scott would have been fruitless without the subsequent organization of petitioner's predecessor. As we have pointed out in our facts, the officers of American Car & Foundry Co. and Brill commenced activities in June, 1925, to purchase either the assets or the controlling stock of companies manufacturing buses, one of which was Hall-Scott. That was the principal goal of the plan, the creation of petitioner's predecessor being only a secondary consideration. The creation of petitioner's predecessor, however important, was not an indispensable condition of the general plan, "without which no other step would have been taken." *American Bantam Car Co., supra,* p. 406.

In answer to respondent's statement that "[he] can not understand how any theory can be advanced to support a purchase by a nonexistent corporation at the time when the agreement of purchase was entered into by the two existing corporations and the three individuals," petitioner replies "that the American Car and Foundry Company and The J. G. Brill Company * * * were acting as promoters of a new corporation and their purchase of 667 shares of Hall-Scott stock must be considered as being for the use and benefit and in trust for the corporation to be formed." In support of that statement petitioner cites *Tulsa Tribune Co.* v. *Commissioner*, 58 Fed. (2d) 937, reversing 21 B. T. A. 1405. We can not agree that that case is controlling of the issue before us. The court in that case stated:

* * * So, where options on property are procured for a corporation by a promoter of it, prior to its creation, the corporation, on its organization, has, by virtue of its right to ratify or adopt his contract, an equitable interest in the property, so that if the promoter takes the deeds he takes title for the use of the corporation. And where the promoter of a corporation takes a lease in his own name for the benefit of the corporation, and after its organization it ratifies his act, the lease becomes the property of the corporation. In a proper case a

promoter who has purchased property for the proposed corporation may be held as a trustee for the corporation in a suit by a creditor of the corporation to subject the land to the payment of his debt.

In Fletcher, Cyclopedia Corporations, vol. 1, ch. 9, sec. 189, p. 598, it is stated:

The term "promoter" involves the idea of exertion for the purpose of getting up and starting a company (or what is called "floating" it) and also the idea of some duty towards the company imposed by or arising from the position which the so-called promoter assumes towards it. A person is not in the position of a promoter, however, except in so far as he is assisting in the formation of the company, in acting, or assuming to act, in its behalf, and is dealt with on the strength of his actual or assumed authority.

There is no support whatsoever in the record before us indicating that the two purchasing corporations at the time of the acquisition of 667 shares of Hall-Scott stock were acting as promoters on behalf of petitioner's predecessor. The agreement of August 29, 1925, by which American Car & Foundry Securities Co., the wholly owned subsidiary of American Car & Foundry Co., and Brill purchased 667 shares of stock of Hall-Scott in no way indicates that such shares were being purchased for a corporation thereafter to be organized.

This leaves for our consideration the questions of whether the control and proportionate interests tests of section 203 (b) (4) of the Revenue Act of 1926 were met in the transaction involved. We believe that the stipulated facts show they were. The several transferors of the shares of stock of Hall-Scott and Fageol Ohio were in control of the transferee, petitioner's predecessor, within the meaning of the statute, immediately after the exchange,[4] and the value of the stock received by each transferor was in proportion to the respective interests of such transferor in the property prior to the exchange. See *American Bantam Car Co., supra; Bodell* v. *Commissioner*, 154 Fed. (2d) 407.

We conclude, therefore, that in the circumstances of this case petitioner holds the stock of Hall-Scott and Fageol Ohio with an other than cost basis, as respondent contends.

*Issue 2.*—Petitioner claims the right to deduct in 1943 the amount of $17,896.84 for Pennsylvania taxes paid in 1944. That payment

---

[4] The definition of "control" is set forth in section 203 (h) (2) (i) of the Revenue Act of 1926 as follows:

"(h) As used in this section and sections 201 and 204—

\* \* \* \* \* \* \*

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

"(i) As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

arose from litigation involving income and franchise taxes of ACF Motors Co. due the Commonwealth of Pennsylvania for the years 1936 through 1942. We have found as a fact that the controversy was settled by a judgment of a court of Pennsylvania in 1943 and that the method used in determining the amount of taxes due was established in that year. Only the mathematical computation remained before the final determination of the exact amount due.

Our finding is based upon the stipulation of facts, the testimony of D. C. Pockels, assistant treasurer and auditor of ACF Motors Co. at the time of the litigation involving those taxes, and Theodore L. Harrison, an attorney who handled details concerning them. Harrison testified that:

* * * There had been a stipulation signed [in 1943] agreeing to the allocation that should be used in determining those taxes, and from that allocation, it was merely an arithmetical computation of the amount of the tax.

The United States Supreme Court, in *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516, stated as follows:

* * * It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid [citing *United States* v. *Anderson*, 269 U. S. 422]; and this cannot be the case where the liability is contingent and is contested by the taxpayer [citing *Lucas* v. *American Code Co.*, 280 U. S. 445]. * * * It must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated.

In the case of *Uncasville Manufacturing Co.* v. *Commissioner*, 55 Fed. (2d) 893, the court, in applying what it conceived to be the holding in *United States* v. *Anderson*, 269 U. S. 422, stated:

* * * The computation was uncertain, but its basis was unchangeable; it was unknown, not unknowable on December 31, 1918. That is the test [of deductibility] * * *.

See *Koppers Coal Co.*, 6 T. C. 1209, 1225; *Security Flour Mill Co.* v. *Commissioner*, 321 U. S. 281; and G. C. M. 25298, C. B. 1947-2, p. 39.

In the case at bar all the events had occurred which fixed the liability and there was no longer any contest by ACF Motor Co. as to its liability for the years in question. We therefore hold that the amount of $17,986.84 is deductible in the year 1943.

*Issue 3.*—Both parties agree that, if there was no protest of the additional deficiency of $36,955.83 determined by the California taxing authorities in 1947 as the amount owed by Hall-Scott for the year 1943 based on its income for 1942, petitioner may have the deduction claimed by that company in the consolidated return filed for 1943. See *Oregon Pulp & Paper Co.*, 47 B. T. A. 772, 780; *Burton-Sutton Oil Co.*, 3 T. C. 1187, 1196.

The competency of certain evidence in the record separates the parties on this point. Respondent contends that "There is no competent evidence in the record * * * relative to whether or not the deficiency [determined by the California taxing authorities] was controverted or protested by Hall-Scott Motor Car Company" because "The knowledge of Mr. Hoell [comptroller of petitioner] with respect to this additional California franchise tax was gained solely through communication with Mr. Watts [attorney in California]." Therefore "the record contains no competent evidence which would support a finding * * * by this Court that the deficiency asserted by the California taxing authorities in 1947 was not protested by Hall-Scott Motor Car Company."

Hoell testified on cross-examination as follows:

Q. You don't know of your own knowledge as to what steps were taken by Mr. Watts with respect to the asserted deficiency by the California taxing authorities, do you?

A. Mr. Watts took no steps whatsoever.

Q. What is your basis for your answer there, sir?

A. Well, in talking to him over the telephone, he told us the only possibility that we might have would be to get some mediation of this interest.

He stated that, upon the advice of the attorney, no contest was made concerning this tax. We can see no reason to hold this evidence incompetent for the purpose of making a finding that there was no protest made concerning the California franchise tax. We therefore hold there was no contest and that the amount claimed is deductible in the taxable year 1943.

*Issue 4.*—Petitioner presented little or no evidence with respect to this issue. We do not know the amount of the deduction claimed for California franchise taxes based on 1943 income. In this state of the record petitioner has not sustained its burden of proof. However, even if we had sufficient evidence before us, there appears no valid reason to change from our conclusion in *Central Investment Corporation*, 9 T. C. 128; affd., 167 Fed. (2d) 1000; certiorari denied, 335 U. S. 826, which the parties agree controls this issue. In that case we held that the franchise tax imposed for the privilege of doing business during 1944, which tax is measured by income realized in 1943, accrued and was deductible for Federal tax purposes in 1944 and not in 1943. For the reasons stated there we so hold here.

Reviewed by the Court.

*Decision will be entered under Rule 50.*