## ACF–BRILL MOTORS CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10321.

United States Court of Appeals
Third Circuit.

Argued April 5, 1951.

Decided June 7, 1951.

Rehearing Denied July 11, 1951.

John E. Hughes, Chicago, Ill. (Theodore L. Harrison, Glen W. Watkins, New York City, John W. Hughes, Harold R. Burnstein, Chicago, Ill., Raymond S. Pruitt, Chicago, Ill., on the brief), for petitioner.

Hilbert P. Zarky, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Special Asst. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The petitioner, ACF-Brill Motors Company, which is the successor by merger of American Car and Foundry Motors Company, seeks the review of a decision of the Tax Court upholding a deficiency in excess profits tax asserted against its predecessor American Car and Foundry Motors Company, which we shall call the taxpayer, for the year 1943. The deficiency was based upon a reduction in the equity invested capital of the taxpayer which the Commissioner made and which the Tax Court upheld based upon the finding that the stock of the

Hall-Scott Motor Car Company and The Fageol Motors Company, of Ohio, which had been acquired by the taxpayer at its organization, was acquired in a tax-free exchange so that the taxpayer held the stock on the basis of the transferors' cost. 14 T.C. 263. Whether the Tax Court erred in so holding is the sole question raised on this review.

The taxpayer was incorporated under the laws of Delaware on December 23, 1925. At a meeting of its board of directors on December 31, 1925 resolutions were passed approving the acquisition by the taxpayer of the entire capital stock of the Hall-Scott Motor Car Company and The Fageol Motors Company from their respective stockholders in exchange for the issuance to the latter of preferred and common stock of the taxpayer. The transactions thus authorized and approved were carried out and at their conclusion the transferors of the stock of Hall-Scott and Fageol were in control of the taxpayer substantially in proportion to their respective interests in the stock which they had transferred. Accordingly if this was the entire transaction to be considered it came squarely within the provisions of Section 203(b)(4) and Section 203(h)(1)(A) of the Revenue Act of 1926, 26 U.S.C.A. § 112(b)(5), (g)(1)(A), and was, therefore, a tax-free exchange in which the taxpayer acquired the stock of Hall-Scott and Fageol on the transferors' basis rather than on the basis of its own cost.

The petitioner urges that this was not the entire transaction, however, but merely a final step in a series of transactions pursuant to a preconceived plan for the organization of the taxpayer, that all of the steps in the plan must be considered as a whole and that when so considered it becomes apparent that the transaction was not a tax-free exchange but that the taxpayer acquired the stock of Hall-Scott and Fageol in a taxable transaction and was, therefore, entitled to include in its equity invested capital the actual cost of the stock at the time of acquisition. The facts to which the petitioner refers are fully set out in the findings of the Tax Court and may be briefly summarized here.

In the year 1925 it became apparent to the officers of the American Car and Foundry Company, of New York, a manufacturer of railroad cars and equipment, and The J. G. Brill Company, of Philadelphia, a manufacturer of street railway cars, that the street railway business was on the downgrade and that the manufacture and sale of busses was becoming increasingly important. Hence W. H. Woodin, president of the American Car and Foundry Company, and S. M. Curwen, president of The J. G. Brill Company, became interested in the manufacture of busses and commenced activities to procure that type of business.

In June 1925 Woodin and Curwen commenced negotiations to acquire the assets or the controlling stock interest of the Hall-Scott Motor Car Company, a manufacturer of a well known engine for busses, The Fageol Motor Company of California, and The Fageol Motors Company, an Ohio corporation, which were manufacturers of bus bodies. Prior thereto Hall-Scott and Fageol of California had given a bankers' syndicate an option to purchase their assets or a controlling interest in their stock. This option expired on August 8, 1925 and on August 28th the officers of American Car and Foundry and Brill submitted to the directors of Fageol of California a proposition for the consolidation of that corporation and Hall-Scott through the formation of a new corporation. This proposition was accepted by the directors of Fageol of California but was never approved by its stockholders. On August 29th American Car and Foundry and Brill entered into an agreement with the stockholders of Hall-Scott for the purchase of 667 out of a total of 1,000 outstanding shares of stock of that corporation, American Car and Foundry agreeing to purchase 556 shares and Brill 111 shares. This agreement was performed on October 31, 1925 by the payment by a subsidiary of American Car and Foundry and by Brill of the purchase price to the stockholders of Hall-Scott in exchange for the shares thus purchased.

Previously on September 9, 1925 the directors of Brill had held a meeting at which the president explained that it might be de-

sirable for Brill to subscribe an additional amount of stock in a holding company which was about to be formed for acquiring and holding stock of Hall-Scott and the Fageol companies. A resolution was accordingly passed authorizing the president to subscribe for such additional stock as might be agreed upon with American Car and Foundry in a holding company to be formed for that purpose. Attached to the minutes of the meeting of September 9th was a draft of a plan for the acquisition of a controlling interest in a bus manufacturing business. For reasons which do not appear the parties did not proceed with the acquisition of the stock of Fageol of California, however, and on October 15, 1925 the owners of more than a majority of the outstanding preferred and common stock of The Fageol Motors Company, of Ohio, submitted an offer to Brill to exchange their stock for stock in a new corporation to be organized.

As has already been stated, the taxpayer was incorporated on December 23, 1925 and pursuant to resolutions adopted by its board of directors on December 31, 1925 all of the stockholders of Hall-Scott Motor Car Company and The Fageol Motors Company, of Ohio, exchanged their stock for the preferred and common stock of the taxpayer. The stockholders thus making the exchange included American Car and Foundry and Brill as owners of 667 shares of Hall-Scott stock, the original stockholders of Hall-Scott with respect to the remaining 333 shares of that company and all of the holders of the outstanding stock of The Fageol Motors Company, of Ohio.

The contention of the petitioner that all these transactions are to be viewed as but steps in a single transaction involving the organization of the taxpayer is necessarily based upon the premise that American Car and Foundry and Brill in agreeing on August 29, 1925 to purchase with their own cash 667 shares of stock of Hall-Scott and in completing the purchase on October 31, 1925 did so as promoters for and on behalf of the taxpayer so that the purchase was in effect a purchase by the taxpayer. For it is only if the fact was that the taxpayer acquired these 667 shares of Hall-Scott stock for cash rather than in exchange for the issuance of its own stock that it could be held that the transaction whereby it acquired the stock of Hall-Scott and Fageol was not a tax-free exchange.

■ The Tax Court, however, made the express finding that "There is no support whatsoever in the record before us indicating that the two purchasing corporations at the time of the acquisition of 667 shares of Hall-Scott stock were acting as promoters on behalf of petitioner's predecessor." We cannot say that there is error in this finding. On the contrary we agree that the record supports it.

Thus the agreement of August 29, 1925 under which American Car and Foundry and Brill contracted with the stockholders of Hall-Scott to purchase the 667 shares of stock of that corporation does not indicate that the purchasers were acting for another corporation to be organized to acquire the stock. On the contrary the purchasers purported to be acting only for themselves. Likewise the resolution passed by the board of directors of Brill on September 9, 1925 referred only to the purchase of Hall-Scott stock by the two purchasing corporations and authorized the payment for "the stock subscribed for by The J. G. Brill Company." The resolution says nothing about the purchase being made on behalf of another corporation or that Brill is acting as promoter for a corporation to be formed. The same thing is true of the draft plan which accompanied this resolution and was annexed to the minutes.

Finally the resolutions of the board of directors of the taxpayer adopted on December 31, 1925 shortly after it was organized, contained no suggestion that the 667 shares of Hall-Scott stock which were then being offered by American Car and Foundry and Brill in exchange for the stock of the taxpayer had in fact been purchased by those companies from the former holders for the account of the taxpayer and that their action in so acquiring the shares as promoters was ratified and confirmed. On the contrary the resolutions treated all 1,000 of the shares of stock of Hall-Scott then being offered for exchange as in exact-

ly the same category and the issuance of shares of the taxpayer's stock in return for the 1,000 shares of stock of Hall-Scott was authorized without any distinction between the holders of those shares.

■ We think that the question which this case raises was basically one of fact for the determination of the Tax Court See Commissioner v. Court Holding Co. 1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; U. S. v. Cumberland Pub. Serv. Co., 1950, 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251. As we have seen, the Tax Court held upon sufficient evidence that the 667 shares of stock of Hall-Scott in question were purchased by American Car and Foundry and Brill for their own account and not as promoters for the taxpayer which had not yet then been formed. We may, therefore, not disturb the finding. It is for this reason that the case of Tulsa Tribune Co. v. Commissioner of Internal Revenue, 10 Cir. 1932, 58 F.2d 937, upon which the petitioner strongly relies, is not controlling. For in that case the evidence compelled the conclusion, in the view of the majority of the Court of Appeals, that the individuals who purchased the property which was subsequently transferred to the Tulsa Tribune Company did so as promoters of that company and not for their own account.

■ The Tax Court suggested in its opinion that one of the tests for determining whether a series of steps is to be treated as a single transaction for tax purposes is that of the mutual interdependence of the steps. Were the steps so interdependent that the legal relations created by one transaction would have been fruitless without the completion of the series? The court concluded that the steps here involved did not meet this test of interdependence. We think that the court was right in considering the test an appropriate one and in concluding that the transactions involved in this case did not meet it.

It is true that the officers of American Car and Foundry and Brill had a basic plan to acquire control of Hall-Scott and the Faegol companies in order to obtain an integrated bus manufacturing business. It is clear, however, that the details of this plan changed as time passed and circumstances changed. At the end of August 1925 when American Car and Foundry and Brill agreed to buy two-thirds of the outstanding stock of Hall-Scott it was contemplated that they might also acquire the stock of Fageol of California. Subsequently, as we have seen, the latter step was not carried out and the plans were ultimately modified so that acquisition was had of The Fageol Motors Company, of Ohio, only. It thus appears that if the two purchasing companies were depending upon a plan when they purchased the 667 shares of Hall-Scott stock in question it was upon a plan which was never fully carried out. Certainly they were not depending upon the plan ultimately carried through which had not then been fully evolved. Under these circumstances the Tax Court rightly held that the creation of the taxpayer, however important in the final analysis, was not an indispensable condition of the general plan without which American Car and Foundry and Brill would not have purchased the 667 shares of stock of Hall-Scott in question.

In considering cases of this kind in which it is asserted that a number of transactions are not to be considered separately for tax purposes but are to be regarded merely as steps in a single taxable transaction an analysis of the facts of the individual case is of first importance. But we think that at the very least it must appear that the entire series of transactions has been carried out in accordance with a prearranged plan and that they are in fact component steps of a single transaction. The Tax Court did not err in concluding that the facts of the present case do not meet that test.

The decision of the Tax Court will be affirmed.