H. B. ZACHRY COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 903–66.    Filed November 2, 1967.

*Robert J. Bird, Chester H. Johnson, O. D. Hite,* and *Edmund M. Gregorie, Jr.,* for the petitioner.

*Harold Friedman,* for the respondent.

74

78

On June 28, 1961, the petitioner and Minerals entered into an agreement under the terms of which petitioner exchanged a carved-out oil payment in the amount of $650,000 for all 10 authorized shares of Minerals' common stock. On June 29, 1961, Minerals borrowed $650,000 from the First City National Bank of Houston, using Zachry's personal endorsement as the required collateral, with the intent of retiring this note on a term payout basis as an oil loan. On the same day Minerals paid petitioner the amount of $649,000 in exchange for 6,328 shares of petitioner's preferred stock. These funds enabled petitioner to retire a current liability, namely a note owed by Gasoline Production, thereby increasing its bonding capacity.

The primary issue in this case is whether these transactions constitute a taxable exchange to petitioner.

Petitioner contends that its transfer of a carved-out oil payment in exchange for Minerals' common stock was a section 351 [3] transfer on which no gain or loss should be recognized. Petitioner further contends that it sold preferred stock to Minerals in a separate transaction and that no gain or loss resulted from such sale under the provisions of section 1032.[4]

Respondent counters by arguing that the carved-out oil payment does not constitute "property" within the meaning of section 351(a), thereby making petitioner's transfer of such oil payment for Minerals' common stock a taxable exchange which does not qualify for nonrecognition under that section. Alternatively, respondent argues that the various transactions between petitioner and Minerals were interrelated steps in a single transaction and that the exchange was, in substance, a section 351 transfer of an oil payment by petitioner in exchange for common stock and taxable "boot" of $649,000.

Respondent's argument that the carved-out oil payment transferred by petitioner to Minerals is not "property" within the meaning of section 351(a) is untenable. Indeed, he misplaces his reliance on *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260 (1958), and *Fleming* v. *Commissioner*, 241 F. 2d 78 (C.A. 5, 1957), reversed sub nom. *Commissioner* v. *P. G. Lake, Inc., supra.* In the *Lake* case the taxpayer reported the assignment of an oil payment, which was consideration for the cancellation of an indebtedness to its president, as a sale of property resulting in a long-term capital gain. The Supreme Court found that the taxpayer was converting future income into present income rather than selling income-producing property which had increased in value; it therefore held that the consideration received by the taxpayer for such oil payment rights was taxable as ordinary income. In the *Fleming* case the taxpayers assigned oil payments in exchange for real estate on the theory that it was an exchange of like kind property under section 112(b)(1) of the Internal Revenue Code of 1939 (sec. 1031, 1954 Code). The Supreme Court held that "The exchange cannot

---

[3] SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation (including, in the case of transfers made on or before June 30, 1967, an investment company) by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.

(b) RECEIPT OF PROPERTY.—If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then—

(1) gain (if any) to such recipient shall be recognized, but not in excess of—

(A) the amount of money received, plus

(B) the fair market value of such other property received; and

(2) no loss to such recipient shall be recognized.

[4] SEC. 1032. EXCHANGE OF STOCK FOR PROPERTY.

(a) NONRECOGNITION OF GAIN OR LOSS.—No gain or loss shall be recognized to a corporation on the receipt of money or other property in exchange for stock (including treasury stock) of such corporation.

satisfy that test where the effect under the tax laws is a transfer of future income from oil leases for real estate." Neither of these cases involved the nonrecognition of income under section 351, but rather the tax consequences of a sale or exchange of an oil payment under other provisions of the Internal Revenue Code. Whereas *Lake* and *Fleming* dealt with the problem of capital gain versus ordinary income, we are here concerned solely with the historic exemption of transfers to a controlled corporation where the taxpayer's interest in the property continues although the form of ownership is changed. Under section 351, Congress has provided for the nonrecognition of gain or loss if "property" is transferred, solely for stock or securities, to a corporation controlled by the transferor. If the transfer so qualifies, there is no exception because it involves the assignment of an oil payment. Consequently, we think the respondent is wrong in his assertion that *Lake* and *Fleming* hold that an assignment of a carved-out oil payment may never be made under a nonrecognition provision without immediate tax consequences.

As an alternative to this interpretation of *Lake* and *Fleming*, respondent contends that the carved-out oil payment transferred by petitioner does not constitute "property" within the meaning of section 351 because it is an assignment of a pure income right. In *Lake*, the Supreme Court, citing with approval certain Court of Appeals and Texas decisions, started from the premise that oil payments are interests in land. Moreover, in *Lemar* v. *Garner*, 121 Tex. 502, 50 S.W. 2d 769, the Texas Supreme Court said that:

rents or royalties payable under oil and gas mineral leases are severable and separable from the ownership of the surface estate and are property rights * * *

On the authority of such decisions, we hold that an oil payment is "property." Respondent has not made any suggestion to the contrary except that it is a "pure income right." Even if the oil payment is a "pure income right," it has present value and is an interest in land.[5] Therefore, we view it as "property" within the common law definition and within the intendment of section 351.[6]

The parties agree as to the basic facts in this case. Petitioner admits that the transactions between itself and Minerals on June 28, 29, and 30, 1961, were interrelated and entered into for the purpose of transforming a current liability into a liability in the form of preferred

---

[5] We do not have before us in this case the question of whether, even if sec. 351 applies, the income from the carved-out oil payment continues to be taxable to the transferor under *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260 (1958).

[6] Sec. 351 does not contain a definition of the term "property." However, the known inclusions and exclusions strongly suggest that the term encompasses whatever may be transferred. 'Significantly, "services" are explicitly excepted by sec. 351(a). Such a singular and extraordinary exception denotes the scope of the term "property" under the rule of statutory construction—*expressio unius est exclusio alterius.*

stock, thereby increasing petitioner's bonding capacity. From this the respondent maintains that petitioner's transfer of an oil payment for Minerals' common stock and its subsequent sale of preferred stock for cash must be treated as one transaction for purposes of section 351, first contending that the issuance of its preferred stock was a sham and, secondly, that the two transactions were inseparable steps in an integrated transaction.

We reject the contention that the sale of petitioner's preferred stock was other than a normal arm's-length purchase of stock by Minerals. It is true that there was a sale between related parties, but that in itself does not destroy its validity. *Sun Properties* v. *United States*, 220 F. 2d 171 (C.A. 5, 1955) ; *Warren H. Brown*, 27 T.C. 27 (1956) ; and *Marjory Taylor Hardwick*, 33 B.T.A. 249 (1935). Facts relevant to the transactions convince us that petitioner's sale of its preferred stock to Minerals was not taxable in view of the provisions of section 1032.[7] Petitioner has had similar preferred stock outstanding since 1942; in 1961 there were over 60 stockholders who held over 23,000 shares of this preferred stock; dividends have always been paid regularly; and petitioner's preferred stock has never been distributed as a dividend or sold at a discount. Likewise, while Minerals paid a slight premium for the 6,328 shares which it received in 1961, the dividends received still represented a yield of 4.9 percent on its investment, and Minerals reported dividends of $31,640 from this source in each of the taxable years ending May 31, 1962, and May 31, 1963. These factors show that the exchange of 6,328 shares of preferred stock by petitioner for cash in the amount of $649,000 had economic reality and qualified as a section 1032 exchange of stock for property.

We turn next to the factual question of whether the transfer of oil payments for common stock and the transfer of preferred stock for cash constituted a single integrated transaction or two separate transactions. Respondent states, and we agree, that "a single transaction may not be broken into various elements to avoid a tax." Here, however, petitioner did not attempt to avoid a tax. Respondent candidly acknowledges that petitioner had alternatives through which its primary purpose, namely the removal of a current liability to increase its bonding capacity, could have been achieved without causing a taxable exchange. Instead, the petitioner went through two separate transactions, each of which had validity in substance as well as form. In the first transaction, petitioner received all of Minerals' authorized

---

[7] See the broad language used in sec. 1.1032–1(a), Income Tax Regs., which provides, in part, as follows :

(a) The disposition by a corporation of shares of its own stock (including treasury stock) for money or other property does not give rise to taxable gain or deductible loss to the corporation *regardless of the nature of the transaction or the facts and circumstances involved.* [Emphasis supplied.]

common stock in exchange for an oil payment which had present value and on which Minerals realized and reported income in subsequent years. In the second transaction, petitioner received cash in an amount equal to the fair market value of the preferred stock which it sold to Minerals and paid a dividend equal to 5 percent of its par value in subsequent years. There was a valid business purpose for each of these transactions standing by itself.

Among various criteria applied by the courts in determining whether a series of steps should be treated as a single indivisible transaction or whether they should retain their separate identities are (1) the intent of the parties, (2) the mutual interdependence of the steps, (3) the time element, and (4) the ultimate result. *American Bantam Car Co.*, 11 T.C. 397 (1948), affirmed per curiam 177 F. 2d 513 (C.A. 3, 1949), certiorari denied 339 U.S. 920. First, with respect to the intent of the parties, we have found that the two transactions were separate in terms of their substance as well as their form. Second, with respect to their mutual interdependence, the courts have looked at whether the steps were so substantively interdependent that the legal relations created by one transaction would have been fruitless without the completion of the others. *ACF-Brill Motors Co.* v. *Commissioner*, 189 F. 2d 704 (C.A. 3, 1951), affirming 14 T.C. 263 (1950) ; *American Bantam Car Co., supra; American Wire Fabrics Corporation*, 16 T.C. 607 (1951) ; and *Southwell Combing Co.*, 30 T.C. 487 (1958). Here, although the steps were interrelated as a matter of planning, they were not in our opinion substantively interdependent within the meaning of the decided cases. Testimony of key witnesses reveals that the First City National Bank would not have made the loan on the oil payment without Zachry's personal signature as collateral. This creates an inference that the loan was made, at least in part, on Zachry's personal endorsement rather than the value of the oil payment. The oil payment had a present fair market value of $470,000 on June 28, 1961, while the loan from the bank was for $650,000. Thus, Minerals could have borrowed at least a substantial portion of this money from the First City National Bank only on Zachry's personal signature. Consequently, the transfer of its oil payment was not a prerequisite to the sale of petitioner's preferred stock to Minerals; and, to this extent at least, the transactions were not so substantively interdependent that one had to follow the other in order to achieve the hoped for end result. Cf. *Gregory* v. *Helvering*, 293 U.S. 465 (1935) ; *Kimbell-Diamond Milling Co.*, 14 T.C. 74 (1950), affirmed per curiam 187 F. 2d 718 (C.A. 5, 1951), certiorari denied 342 U.S. 827 ; and *Southwell Combing Co., supra.*

While the two transactions in question happened within 3 days of each other, this is not by itself a controlling factor. Consecutive trans-

actions in immediate sequence may be entirely different in nature and therefore separate and distinct. Cf. *Sun Properties, Inc.* v. *United States, supra*, and *W. A. Hoult*, 23 B.T.A. 804 (1931). In the present case, as we have previously indicated, the facts warrant such a conclusion of separateness.

Respondent relies heavily on *Fred L. Dickey, et al., Executors*, 32 B.T.A. 1283 (1935), for the proposition that the overall purpose, prearrangement, and control over completion of the transaction are decisive in determining whether separate steps shall be treated as one. See also *First Seattle D. H. Nat. Bank* v. *Commissioner*, 77 F. 2d 45 (C.A. 9, 1935) ; and *First National Bank, et al., Executors*, 34 B.T.A. 631 (1936), affd. 107 F. 2d 141 (C.A. 6, 1939). In *Dickey*, the taxpayer offered to exchange fixed assets in the form of clay and coal properties for the stock of a newly formed corporation, *contingent* upon the corporation's purchase from him, for cash, of current assets connected with the operation of the properties. The transfer was carried out according to the above plan, the taxpayer alleging that there were two separate and distinct steps to the transaction. This Court found, on such facts, that the transfers were but parts of a whole whereby the taxpayer exchanged all of his assets for cash and stock of the corporation.

We think the *Dickey* case is distinguishable on its facts from the instant case. In *Dickey*, the taxpayer attempted to transfer, in separate but concededly contingent and therefore substantively interdependent steps, the assets required to complete the formation of the new corporation. He did not, however, present any substantive reason for this division into separate steps, and the new corporation clearly needed both the fixed and the current assets before it could begin operation. In contrast, the only asset which the petitioner in this case had to transfer to Minerals to enable Minerals to carry out its corporate function was the oil payment. The purchase by Minerals of petitioner's preferred stock was a separate investment; to be sure, Minerals could have loaned money to petitioner rather than purchase the preferred stock. Moreover, the mere fact that closely related assets are transferred to a corporation in separate transactions is not determinative of whether the transactions should be treated as one. Certainly the courts have not treated them together when the taxpayer has given sufficient justification for treating them separately. See and compare *Sun Properties, Inc.* v. *United States, supra; Warren H. Brown, supra;* and *Marjory Taylor Hardwick, supra*.

In our opinion the petitioner herein created two separate transactions. Since each transaction had substance by itself as well as a business purpose, we reject respondent's contention that, because of their interrelatedness, there were two steps to be treated as one transaction

for tax purposes. Indeed, we look askance at his suggestion that the petitioner, having followed a legitimate, authorized, and well-recognized nontaxable course of action in order to arrive at a specific result, could have reached the same result by following a different but taxable course of action. Under these circumstances we decline respondent's invitation to relegate petitioner to a taxable course of action. Cf. *Edward P. Clay*, 46 T.C. 505, 511 (1966).

Accordingly, we hold that petitioner's transfer of the oil payment to Minerals in exchange for its common stock was a nontaxable exchange under section 351, and that its sale of preferred stock for cash qualified as a nontaxable exchange under section 1032. Petitioner therefore realized no taxable gain from the two transactions. Having reached these conclusions, we need not consider the two remaining questions, viz, whether gain from the transactions is taxable as ordinary income or long-term capital gain and the year in which any gain should be recognized.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

RAUM, SCOTT, and SIMPSON, *JJ.*, concur in the result.